**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 17, 2019[*]
Decided May 17, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-2927

| | |
|---|---|
| ANTONIO M. BOGAN, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 14 C 7849 |
| JEFFERY GERMAN, et al., *Defendants-Appellees*. | Gary Feinerman, *Judge*. |

**O R D E R**

Antonio Bogan, an Illinois parolee, sued multiple police officers under 42 U.S.C. § 1983 for violating his Fourth Amendment rights when they searched his apartment without a warrant and seized and searched his vehicle. The district court granted the defendants' motion for summary judgment and denied Bogan's cross-motion, concluding that, as a parolee, he had no reasonable expectation of privacy in his

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

residence and that the officers had probable cause to seize and search his vehicle. We agree with the district court and affirm.

On cross-motions for summary judgment, we construe all facts and draw all reasonable inferences in favor of Bogan, the party against whom the motion under consideration was filed. *See Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017). In July 2013, Bogan was arrested as he exited his apartment building in Joliet, Illinois. Twelve hours earlier, Dorie Merino had reported to the police that Bogan had kicked in her front door and fired a shot into her apartment. Bogan had previously accused Merino of owing him money for a heroin debt, and he had threatened her with a gun several times while demanding that she repay him. Based on Merino's statements and the recovery of a .40 caliber shell casing at the apartment, the Joliet police circulated an intelligence bulletin relating that there was probable cause to arrest Bogan for home invasion. A search of law enforcement databases revealed Bogan's home address and that he owned a Chevy Impala and an Oldsmobile Cutlass. Officers who responded to the bulletin arrested Bogan at 1:42 p.m. in the parking lot of his apartment complex and placed him in the backseat of a cruiser.

From the back of the cruiser, Bogan called a friend and asked him to take the Oldsmobile Cutlass that was parked in the lot. But officers refused to allow the friend to access the car, saying that it could be removed only if the friend first allowed officers to search it. Bogan told his friend over the phone not to allow officers to search. Officers seized the car and did not allow it to leave the parking lot. (The officers dispute that this interaction with Bogan's friend ever occurred.)

Then officers Frank Wascher and W. Bussey used a key to enter Bogan's apartment building and posted themselves in the hallway outside his apartment door to ensure that no one entered or exited. A short time later, Detective Jeffrey German, who had learned earlier that Bogan was on parole, arrived and obtained written consent from Bogan to search his apartment and the Impala. German then entered Bogan's apartment with officers Wascher and Bussey to begin the search. During the search, the officers found a clear plastic bag containing thirty pills and seized it after German searched the internet on his phone to confirm that the pills were a controlled substance.

After the search, German questioned Bogan in the cruiser about the Cutlass. Bogan first denied owning the vehicle or ever having been in it. But when German confronted him with the registration information, Bogan said that even though the car was still parked at his residence, he had sold it to "Mike Smith," and he did not know

how to contact "Smith." After he questioned Bogan, German inspected the Cutlass through a window and saw on the back seat a closed garment bag that appeared to contain a long object shaped like a rifle case. German told officers to secure the vehicle.

German then went to the police station around 3:00 p.m. to request that a K-9 officer bring a drug-sniffing dog to the scene. The only one on duty was unavailable, so German called three other law enforcement agencies requesting a K-9 officer, but none could respond. During this time, German also contacted the prosecutor's office to discuss the anticipated warrant application and arrange the processing of the evidence from the apartment search. The K-9 officer on duty later became available, and at 4:48 p.m., the officer and his dog arrived. The dog immediately alerted for the presence of narcotics in the Cutlass. At 6:45 p.m., officers obtained a warrant to search the Cutlass for cannabis and controlled substances. Executing the warrant, officers found a .40 caliber handgun, a blender with white powdery residue, sandwich bags, a digital scale, and, inside the garment bag, a rifle, rifle case, and ammunition.

Bogan filed this lawsuit alleging that the officers violated the Fourth Amendment by unlawfully searching his apartment before they obtained his consent or knew that he was on parole. He also alleged that the officers lacked probable cause to seize and search his vehicle. (Bogan brought other claims, too, but he does not challenge their dismissal.) After considering the parties' cross-motions, the district court entered summary judgment for the officers, concluding that there was no material dispute that the officers knew that Bogan was a parolee before they searched his apartment and thus he had no reasonable expectation of privacy. Further, the officers had probable cause to seize and search the Cutlass, and they had seized it for a reasonable amount of time before the search. Bogan appeals, and we review the entry of summary judgment de novo. *Tapley v. Chambers*, 840 F.3d 370, 376 (7th Cir. 2016).

Bogan first argues that the search was unreasonable because it began before the officers knew that he was a parolee and before he consented. A warrantless and suspicionless search of a parolee's apartment is reasonable only if officers know *at the time* of the search that he is a parolee and lives in the apartment. *United States v. White*, 781 F.3d 858, 862–63 (7th Cir. 2015) (citing *Samson v. California*, 547 U.S. 843, 850–55 (2006)). Bogan contends that the search began when Bussey and Wascher entered the apartment building—before German (who knew Bogan was a parolee) arrived and obtained consent.

But Bogan, who was detained in the back of a police cruiser when the officers entered the apartment building, furnishes no evidence to contradict the officers' evidence that they entered Bogan's apartment only after German arrived. Indeed, he concedes that he could not see the officers from his vantage point and thus did not know when they entered his apartment. And because German's knowledge of Bogan's parole status can be imputed to the other officers, *United States v. Harris*, 585 F.3d 394, 400 (7th Cir. 2009), the officers had the necessary knowledge when they entered the apartment. Thus, the timing of Bogan's consent is immaterial.

Further, Bussey's and Wascher's presence outside of Bogan's apartment door did not implicate Bogan's privacy rights. The officers' uncontradicted attestations show that they remained in the hallway—a shared space, not one that is intimate to the apartment itself or used for activities "intimately linked" to Bogan's home to the exclusion of others—so Bogan had no reasonable expectation of privacy there. *United States v. Sweeney*, 821 F.3d 893, 902–03 (7th Cir. 2016); *see also United States v. Concepcion*, 942 F.2d 1170, 1172 (7th Cir. 1991). Unlike the officers in *United States v. Whitaker*, 820 F.3d 849, 853 (7th Cir. 2016), the officers here stood outside the door to secure the area for an anticipated search before German arrived, not to "snoop" "using sensitive devices." *Id*.

Bogan next contends that the officers' seizure of the pills was unlawful because the pills' criminality was not readily apparent. *See United States v. Cellitti*, 387 F.3d 618, 623–24 (7th Cir. 2004). Under the plain-view exception, officers may seize an item outside the scope of a search if they were lawfully present where they viewed the item, it was in plain view, and its incriminating nature was "immediately apparent." *Id.* at 623. But we need not decide whether the plain-view doctrine applies because Bogan, as a parolee, lacked a reasonable expectation of privacy. *See White*, 781 F.3d at 863; *see also United States v. Huart*, 735 F.3d 972, 975–76 (7th Cir. 2013). Bogan's parole agreement required him to "consent to a search of [his] person, property, or residence" and prohibited him from possessing "narcotics or other controlled substances in any form." Because Bogan knew that his apartment was subject to search for these items, the officers' seizure of the pills could not meaningfully interfere with Bogan's diminished possessory interest as a parolee. *See White*, 781 F.3d at 863; *Huart*, 735 F.3d at 975–76.

Bogan further argues that the police unlawfully prevented the removal of his Cutlass from the parking lot because they lacked probable cause to seize it. An officer may temporarily seize a person's property without a warrant if there is probable cause to believe that it holds contraband or evidence of a crime and "the exigencies of the

circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Burgard*, 675 F.3d 1029, 1032 (7th Cir. 2012) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). In Bogan's view, the relevant facts known to the officers who refused to allow Bogan's friend to remove the car—that Bogan was the suspect of a home invasion and the registered owner of the vehicle—were insufficient to establish probable cause to seize the vehicle.

If we accept Bogan's assertion that a friend tried to move the Cutlass shortly after Bogan's arrest, beginning the seizure then, a reasonable jury could not conclude based on the undisputed evidence that the officers lacked probable cause to believe that there were weapons or drugs in the Cutlass. Officers knew that Bogan was the vehicle's registered owner, that he was the named suspect of a home invasion and shooting over a drug debt, and that he was arrested near the parked car. These circumstances support the officer's "common-sense judgment" that evidence of the home invasion, or the associated drug trafficking, was in Bogan's vehicle. *See United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010). Moreover, given the heavy regulation of automobiles, Bogan had a diminished expectation of privacy in the Cutlass, and its "ready mobility" created an exigency to justify its seizure without a warrant under the automobile exception, *see Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996); *Carroll v. United States*, 267 U.S. 132 (1925), which applies even though Bogan could not access the vehicle, *United States v. Zahursky*, 580 F.3d 515, 523 (7th Cir. 2009). (Indeed, Bogan maintains that he tried to have a friend remove the car.)

Bogan also contends that officers detained the Cutlass for an unreasonable amount of time to obtain the search warrant. An otherwise permissible warrantless seizure may violate the Fourth Amendment if the police fail to obtain a search warrant in a reasonable amount of time. *Burgard*, 675 F.3d at 1032 (citing *Segura v. United States*, 468 U.S. 796, 812 (1984)). To assess reasonableness, we balance the nature of the intrusion on the individual's possessory interest in the seized item and the law enforcement-related concerns, taking into account whether the police "diligently pursue[d] their investigation." *Burgard*, 675 F.3d at 1033 (quoting *Place*, 462 U.S. at 709) (alteration in original).

In balancing Bogan's possessory interest in the Cutlass once he was arrested and the police's need to secure evidence, we conclude that no reasonable juror could find that the delay was unreasonable. Accepting Bogan's assertion that the officers seized the Cutlass immediately after his arrest at 1:42 p.m., when his friend attempted to move the vehicle, the officers obtained the warrant approximately five hours later. In that

time, they conducted a diligent investigation: they searched Bogan's apartment, questioned him about the Cutlass, sought K-9 assistance from four different police agencies, discussed the case with a prosecutor, and applied for the warrant once the dog arrived and immediately alerted for narcotics. Moreover, Bogan had a diminished possessory interest in the Cutlass because he was already under custodial arrest; he had no hope of accessing the car. These facts do not support an inference that the delay was unreasonable. *Burgard*, 675 F.3d at 1034. German may have been able to work more quickly to get the warrant and avoid the K-9 search, but instead he wanted to consult with the prosecutor and obtain more information about the vehicle before securing the warrant. *See id*. "We do not want to discourage this sort of careful, attentive police work, even if it appears to us that it could or should have moved more quickly." *Id*.

Finally, Bogan argues that the K-9 sniff, a form of search, was unlawful because the police lacked probable cause to search inside the vehicle and used the dog as pretext to create it. But given the undisputed facts at the time German decided to request the K-9 sniff, no reasonable juror could find the absence of probable cause. During the apartment search, officers found a controlled substance. Then, when German questioned Bogan about the Cutlass, he initially denied any connection to it, despite being the registered owner and despite its presence in his apartment building's parking lot. And after German confronted Bogan with the vehicle's registration, he changed his story and said that he had sold it to "Mike Smith" but had no contact information for "Smith." The inconsistency and implausibility of his story support German's reasonable belief that the Cutlass contained contraband. *See United States v. Wimbush*, 337 F.3d 947, 950 (7th Cir. 2003). Further, after German looked in the car, he saw what appeared to be a rifle case. Taken together, these facts support a reasonable judgment that the car contained evidence of the suspected crime—the firearm used in the shooting and the drugs that created the dispute.

Because Bogan lacked sufficient evidence from which a reasonable jury could conclude that the search of his apartment and vehicle violated the Fourth Amendment, we AFFIRM the district court's judgment.