In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3239

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUAN CARLOS HERNANDEZ,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 00-CR-113-C-01—**Barbara B. Crabb**, *Chief Judge.*

ARGUED APRIL 11, 2002—DECIDED NOVEMBER 4, 2002

Before CUDAHY, DIANE P. WOOD, and EVANS, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Juan Carlos Hernandez was a methamphetamine dealer who was caught on a surveillance videotape picking up a substantial sum of money in connection with his drug trade. He pleaded guilty to Count One of a two-count indictment, in which he had been charged with conspiring to distribute in excess of 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One), and distributing in excess of 50 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count Two). He received a sentence of 360 months, which included a two-point Guidelines enhancement for his role as a leader, a rejected three-

point downward adjustment for acceptance of responsibility, and classification as a career offender. The district court overruled Hernandez's objections to these three factors. He has renewed his challenges on appeal, but finding no error in the district court's rulings, we affirm his sentence.

## I

The story of the drug dealings that got Hernandez in trouble begins with Raymond Orr, a resident of Superior, Wisconsin, who sold methamphetamine in that area. Initially, Orr used a man named Jerry as his supplier, but after he received "junk" from Jerry, he decided that he needed to make a change. Shortly thereafter, Orr was referred to a team of two alternate suppliers, whom he described as "Mexican looking" men. The older of the two turned out to be Hernandez; the younger was Milton Gonzales. The evidence indicated that Orr spoke no Spanish, and that Hernandez's English was limited; Gonzales served as an interpreter for the other two. Hernandez also used Gonzales as his driver, paying him $500 per trip for his services.

Orr had a revolving credit arrangement with Hernandez, whereby Hernandez and Gonzales would bring methamphetamine to Orr, and Orr would pay them the money for the prior week's delivery. Normally, Hernandez and Gonzales delivered approximately ½ pound of methamphetamine to Orr, but on one occasion they gave him 2 ½ pounds. The three had a regular meeting Sunday evenings around 8:00 p.m.

In early November 2000, Orr was caught. The police obtained and executed a search warrant for his residence, but when they showed up Orr agreed immediately to cooperate. He showed them where he had stored 0.5 grams of methamphetamine and where he had buried a

large quantity of the drug that he had obtained at an earlier time from Hernandez. Orr also agreed to cooperate in the police effort to catch his suppliers. As part of that cooperation, he allowed the police to install microphones and cameras in his garage so that they could monitor his next meeting with Hernandez and Gonzales.

The Sunday after Orr's home was searched, Hernandez and Gonzales showed up as usual around 8:00 p.m. to pick up approximately $10,000 from Orr. Gonzales drove to Orr's home. Most of what occurred next was captured on a videotape. The three met in the garage, but Hernandez did not appear to say very much. Gonzales carried on a conversation with Orr, in keeping with his role as Hernandez's helper. After Orr delivered the money, Hernandez and Gonzales counted it and tried to leave Orr's residence. They were intercepted by the police. Although Hernandez tried to throw the money away, the police were too fast for him, and they arrested him immediately.

**II**

On March 31, 2001, Hernandez pleaded guilty to the conspiracy count. Although he made some comments that caused the district court to explore his genuine willingness to plead guilty, in the end the court found that he was indeed entering his plea knowingly and voluntarily, commenting that she was "satisfied that the government could prove the factual basis for the plea, and that you wish to enter a plea of guilty even though you have some reservations about your own guilt for the amount of methamphetamine." Before this court, Hernandez has not made any argument that he should have been permitted to withdraw the guilty plea; we therefore have no need to consider any such possibility. More importantly, his plea of guilty represents his sworn statement that he was indeed conspiring to deal in more than

500 grams of methamphetamine, and he is thus bound to that fact.

After accepting the guilty plea, the district court ordered the preparation of a Presentencing Report (PSR). Hernandez cooperated with the probation officer to a certain degree, but he also furnished a written statement of his guilt in which he claimed that he did not know what kind of illegal drug he was transporting with Gonzales, and he claimed that he was paid less than $1,000 to accompany Gonzales to Superior. Based on the statements in the letter, the probation officer recommended that Hernandez should not receive any reduction in his sentence for acceptance of responsibility under U.S.S.G. § 3E1.1. The probation officer noted that Hernandez's statements were inconsistent with those of Orr and Gonzales, and that the videotape also belied Hernandez's claims.

At the sentencing hearing, Orr and Gonzales testified that Hernandez was the one in charge of the operation. The district court considered that testimony and viewed the videotape, and concluded that "it's very clear that Mr. Hernandez was the leader of this escapade." Hernandez's denials not only helped to influence the judge not to give him the acceptance of responsibility downward adjustment; they also persuaded her that she should enhance his offense level by two under § 3B1.1(c). On the latter point, the judge observed that "Mr. Hernandez was the one who decided where they would go. He was the one that knew where the customer lived, he was the one that gave directions, he was the one that kept the bulk of the money, and he was the one that supplied the methamphetamine." In addition, the court accepted the recommendation in the PSR that Hernandez was a career offender for purposes of § 4B1.1. The net result was that Hernandez had an offense level of 37, and a criminal history category of VI, which produced a sentencing range

of 360 months to life. The court sentenced him to the bottom of that range, 360 months, to be followed by five years' supervised release.

## III

Hernandez claims that all three sentencing decisions of the district court—that is, to treat him as a career offender, to enhance his offense level by two for his supervisory role, and to deny a three-level downward adjustment for acceptance of responsibility—were error. We review the latter two only for clear error. See *United States v. Matthews*, 222 F.3d 305, 307 (7th Cir. 2000) (supervisory role); *United States v. Herrera-Ordones*, 190 F.3d 504, 511 (7th Cir. 1999) (acceptance of responsibility). To the extent that the career offender determination reflected a legal interpretation of the Guidelines, we review that *de novo. United States v. Taylor*, 135 F.3d 478, 481 (7th Cir. 1998).

### A.  Career Offender

We consider first whether Hernandez was properly classified as a career offender for purposes of § 4B1.1. According to that section:

> a defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Hernandez does not dispute that he was over 18 at the time of the offense of conviction (according to the court's

judgment form, he was born in 1970). Nor can he dispute that the "instant offense of conviction" falls within Part 2, as it is plainly a felony and a controlled substance crime.

What he argues is that the two prior felony convictions on which the district court relied should not have been treated as crimes of violence or controlled substance offenses for purposes of Part 3. The first prior conviction was a June 22, 1989 offense for possession of cocaine, for which Hernandez was sentenced on July 8, 1998, to one year in jail and three years' probation. Hernandez conceded at the sentencing hearing in the present case that this prior conviction was for possession with intent to sell. The second prior conviction was a 1997 California conviction for involuntary manslaughter to which Hernandez pleaded guilty, that arose out of a brawl outside a club in which a bouncer was accidentally shot and killed. Hernandez received a sentence of 109 days in jail for that offense. Hernandez urged the district court to disregard the cocaine offense because it was nearly 10 years old when he was sentenced and involved very small amounts of the drug; he attempted to minimize the involuntary manslaughter conviction as not really involving violence because it was *involuntary* manslaughter and no one intended that death should result.

In our view, the district court properly relied on both prior convictions. The cocaine offense was, as Hernandez admitted, for possession with intent to distribute, and there can be no doubt that this falls under the definition used by § 4B1.1. See, *e.g.*, U.S.S.G. § 4A1.2(e); *United States v. Pearce*, 191 F.3d 488, 498 (4th Cir. 1999); *United States v. Tejada*, 146 F.3d 84, 87 (2d Cir. 1998). While not all involuntary manslaughter convictions are necessarily crimes of violence, compare *Bazan-Reyes v. INS*, 256 F.3d 600, 609 (7th Cir. 2001) (immigration context), we have noted that reckless conduct may properly be characterized as a crime of violence if it presents "a serious poten-

tial risk of physical injury to another." *United States v. Rutherford*, 54 F.3d 370, 374 (7th Cir. 1995). The district court had before it facts that showed that Hernandez had grabbed from the bouncer the gun that was later used to kill him. On these facts, the court concluded that he thereby had taken action "almost destined to lead to serious injury or death if he intended to use it to fend off his pursuers." (Hernandez does not argue that the court should not have looked at those underlying facts; he claims instead that they do not add up to a violent situation. We thus have no occasion to decide whether this was a situation in which reference to those facts was proper.) We conclude that the district court properly classified Hernandez as a career offender.

### B.   Acceptance of Responsibility

Hernandez also urges that he cooperated so fully with law enforcement authorities after his arrest that it was clear error for the district court to deny the three-level acceptance of responsibility adjustment provided by § 3E1.1. He admitted what he calls the "salient" facts that supported Count One of the indictment, and his plea of guilty provided "significant evidence" of his acceptance of responsibility. That may be true, but the court was not obliged to apply § 3E1.1 just because he pleaded guilty. The court gave two independent reasons for its decision: first, the letter Hernandez wrote to which we referred earlier was not fully honest and denied relevant conduct (such as whether Hernandez knew that the drugs were methamphetamines, and how much money he was going to receive), and second, that he was denying relevant conduct when he insisted that he was not the person in charge, as the videotape illustrated. The first of these reasons is enough to support the denial of the adjustment for acceptance of responsibility. The second is

intertwined with his argument that his offense level should not have been increased for his supervisory role. As we explain below, the district court did not commit clear error on this point either, and thus it was entitled to regard his denials as evidence of a lack of full acceptance of responsibility.

## C. Supervisory Role

Hernandez's appeal on this point relies heavily on what he argues is the ambiguous nature of the videotape, to which the court expressly referred when it imposed this adjustment and refused to grant the acceptance of responsibility break. We have viewed the videotape, and we agree with Hernandez that it is hard to draw much of an inference from it about who was in charge (Hernandez or Gonzales, or perhaps even Orr) from the videotape standing alone. Hernandez's version of the facts was that Gonzales was the leader, and Hernandez (who stood about 5'10" and was a hefty 250 pounds) was the "enforcer" for Gonzales. The problem for him is that both Gonzales and Orr testified that it was Hernandez who was the leader and Gonzales who was the assistant taking orders. Hernandez thinks that the district court should not have accepted their testimony, but the district court was well aware of the incentives to lie that Gonzales and Orr might have had, and it was well within its rights to credit their testimony nevertheless. There is certainly nothing in the videotape that contradicts their testimony; it is quite consistent with their version, in that it shows Hernandez speaking to Gonzales in Spanish, and then Gonzales translating for Orr, just as they said. Thus, even though we agree that the videotape standing alone would probably not be enough, the district court had direct testimony that supported the enhancement. We cannot find clear error in its decision to rely on that testimony. We

note as well that it is enough for purposes of the enhancement Hernandez received to show that the defendant directed one other person. See U.S.S.G. § 3B1.1(c); *United States v. Sierre*, 188 F.3d 798, 803 (7th Cir. 1999).

## IV

Hernandez pleaded guilty to the charge of participating in a conspiracy to distribute a large amount of methamphetamine, and he received a lengthy sentence for his crime. We find no error in any of the district court's sentencing determinations, and we thus AFFIRM its judgment.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*