In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-3379

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TRAVIS LEE BEECHLER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:20-cr-00211-JPH-MJD-1 — **James P. Hanlon**, *Judge.*

ARGUED DECEMBER 6, 2022 — DECIDED MAY 19, 2023

Before ROVNER, HAMILTON, and ST. EVE, *Circuit Judges.*

ROVNER, *Circuit Judge.* A jury convicted Travis Beechler of drug trafficking and firearms offenses based on evidence gathered pursuant to a home detention compliance check. Beechler alleged that the search was an unlawful warrantless law enforcement search disguised as a home detention compliance check, and thus violated his Fourth Amendment rights. Viewing the totality of the circumstances, Beechler's expectation of privacy was minimal, and the government's

legitimate needs were significant; therefore, we agree with the district court that the search did not violate his Fourth Amendment rights. We also affirm the district court's denial of Beechler's motion for a judgment of acquittal and for a new trial and affirm the district court's sentencing decision.

I.

In August 2020, Travis Beechler and his girlfriend, Kimia Turner, were both serving terms of home confinement through Marion County Community Corrections (MCCC) and were required to stay within their residences. Turner reported her residence as 2041 East Legrande Avenue, in Indianapolis, Indiana, and Beechler reported his elsewhere. At the same time that Beechler and Turner were serving their home confinement sentences, the FBI Safe Streets Gang Task Force was engaged in a wiretap investigation involving several individuals distributing controlled substances in Indianapolis. The agents discovered that a target of the investigation expected a shipment of marijuana to arrive at Turner's residence at 2041 East Legrande Avenue. During their surveillance of the house, the FBI agents noticed a man with an ankle monitor and reported to MCCC that it suspected that one of the occupants was on home confinement and might be engaged in drug trafficking activity. Based on this report, MCCC employees surmised that Beechler was not staying at his reported address but was instead staying with Turner at 2041 East Legrande. On August 3, 2020, an employee from MCCC, accompanied by officers from the Indianapolis Metropolitan Police Department (IMPD), went to Turner's address to check compliance with residency requirements and other terms of the home detention contract. While there, MCCC officers encountered both Turner and Beechler and discovered

methamphetamine in the bedroom in which they were staying. Officers then stopped the search and obtained a search warrant for the residence. During that search they seized five firearms, ammunition, and additional evidence of drug trafficking, including 388.4 grams of methamphetamine, 10.6 grams of heroin, and $1,508 in cash. Beechler was charged with possession with intent to distribute controlled substances, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a previously convicted felon.

After officers took Beechler into custody and read him his *Miranda* rights, he agreed to an interview in which he acknowledged that he stored the drugs at the home for another person in exchange for free rent, that he had the ability to sell pounds of methamphetamine at a time, that others often fronted him up to five pounds of methamphetamine, and that he tried to make at least a thousand dollars for each pound of methamphetamine sold. He also acknowledged the guns in the home, admitted that he knew they were loaded, and said that they were there to protect the drugs for which he was responsible.

Before trial, Beechler filed a motion to suppress the evidence recovered from the compliance check, claiming that although law enforcement labeled the search as a community corrections compliance check, the officers actually conducted the search for law enforcement purposes and thus the warrantless search violated his Fourth Amendment rights. The district court denied Beechler's motion to suppress, finding that Beechler waived his Fourth Amendment rights as a condition of MCCC's Home Detention agreement. That agreement contained the following provision:

> You waive your rights under the Fourth Amendment of the United States Constitution, as well as Article I, Section 11 of the Indiana Constitution, regarding search and seizure of your person or effects. Furthermore, you shall permit law enforcement, MCCC staff, and/or their contracted vendor, as well as any law enforcement officer acting on MCCC's behalf, to search your person, residence, motor vehicle, or any location where your personal property may be found, to insure [sic] compliance with the requirements of MCCC or their contracted vendor.

R. 46-3 at 1.

After a two-day trial, the jury convicted Beechler on all counts. Beechler moved for a judgment of acquittal and a new trial, arguing that the evidence was insufficient to support the convictions. The district court denied Beechler's post-trial motions, reasoning that they merely restated his suppression arguments rather than contesting the sufficiency of the evidence at trial.

At sentencing, the district court, over Beechler's objections, applied four different sentencing enhancements: the "manager or supervisor" enhancement, the "drug premises" enhancement, an enhancement for having five firearms, and the "career offender" enhancement. The district court sentenced Beechler to a total of 360 months in prison—below the bottom end of the United States Sentencing Guidelines range of 420 months.

On appeal, Beechler challenges the district court's denial of his motion to suppress, the denial of his motion for a judgment of acquittal, the denial of his motion for a new trial, and the district court's application of various sentencing enhancements.

## II.

### A.

Beechler contends that the district court improperly denied his motion to suppress primarily because it failed to view the search for what it was—a warrantless, non-consensual search. In considering a district court's denial of a motion to suppress, we review questions of law de novo and findings of fact for clear error. *United States v. Radford*, 39 F.4th 377, 383 (7th Cir. 2022).

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. Where a search is found to be unreasonable in violation of the Fourth Amendment, the exclusionary rule prohibits the use of evidence recovered from the illegal search at trial. *Utah v. Strieff*, 579 U.S. 232, 237 (2016). A court assesses the reasonableness of a search by looking at the totality of the circumstances, including "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118–19 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)); *Samson v. California*, 547 U.S. 843, 848 (2006); *see also United States v. White*, 781 F.3d 858, 862 (7th Cir. 2015). When assessing the privacy expectations of a person subject to a correctional system, salient factors include the level of

punishment or supervision to which the individual has been subjected, whether the individual has agreed to waive some or all Fourth Amendment rights in exchange for more freedom within the correctional system, and expectations of privacy formed pursuant to state law. *See United States v. Woods*, 16 F.4th 529, 535–37 (7th Cir. 2021). On the other side of the scale, a court must consider the government's interest in protecting the public, reducing recidivism, and promoting reintegration into society. *Samson*, 547 U.S. at 849–50.

Beechler's status as a person serving a sentence of home confinement informs both sides of the balance as a court assesses "the intru[sion] on individual liberty and the degree to which it promotes legitimate governmental interests." *Knights*, 534 U.S. at 119. When the Supreme Court weighed the privacy expectations of the probationer in *Knights*, it considered that punishment exists on a continuum from probation to solitary confinement, with inversely proportional expectations of privacy. *Id.*; *see also Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (noting that expectations of privacy correspond to the "continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service," with work-release programs in the middle). It then noted that probation significantly diminishes a person's expectation of privacy and increases the governmental interest in preventing recidivism such that government officials need no more than a reasonable suspicion to conduct a search of a probationer's house. *Id.* at 119–21. Then, in *Samson*, the Court went one step further while considering the privacy rights of a parolee and concluded that "a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy

that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." 547 U.S. at 847.

Like Samson, Beechler had severely diminished expectations of privacy by virtue of his status as a person on home confinement subject to the strict conditions for participation in the program. *See Samson*, 547 U.S. at 852 ("The extent and reach of these conditions clearly demonstrate that parolees like petitioner have severely diminished expectations of privacy by virtue of their status alone."). Beechler was part of a post-conviction monitoring program that allowed convicted individuals to serve out their sentence at home with the use of an electronic monitoring system in what is essentially "an established variation on imprisonment of convicted criminals." *Id.* at 850 (*quoting Morrissey v. Brewer*, 408 U.S. 471, 477 (1972) ("The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.")). Beechler's status on home confinement, like Samson's status as a parolee, significantly diminished his expectations of privacy. *See Id.* at 852.

People on home confinement or parole have lowered expectations of privacy, not merely because of their status but also because the government usually extends the benefits of additional freedom in exchange for an agreement to comply with certain requirements. *Id.* at 850; *see also Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 365 (1998). In both *Knights* and *Samson*, the prisoners, like Beechler, signed waivers of virtually all of their Fourth Amendment rights in exchange for particular conditions of release. *Knights*, 534 U.S.

at 114; *Samson*, 547 U.S. at 846.[1] Neither opinion, however, relied exclusively on the acceptance of the search condition in the agreement signed by the prisoner in its determination of reasonableness under the Fourth Amendment. *See Knights*, 534 U.S. at 118 ("We need not decide whether Knights' acceptance of the search condition constituted consent in the *Schneckloth* sense of a complete waiver of his Fourth Amendment rights, however, because we conclude that the search of Knights was reasonable under our general Fourth Amendment approach of 'examining the totality of the circumstances,' with the probation search condition being a salient circumstance.") (*quoting Ohio v. Robinette*, 519 U.S. 33, 39 (1996)); *Samson*, 547 U.S. at 852 n.3 (quoting *Knights* for this same proposition). However, as the Court in *Knights* pointed out, the fact that a parolee signed an agreement waiving Fourth Amendment rights is certainly a "salient circumstance" in the examination of the totality of the circumstances. *Knights*, 534 U.S. at 118.

The agreement Beechler signed weighs heavily into the totality of the circumstances analysis, as that agreement contained clear and significant restrictions on Beechler's liberty—requiring him to be confined to the inside of his home at all times except for work, medical appointments, and a select few

---

[1] Samson agreed in writing, as required by California law, that he could be "subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." *Samson*, 547 U.S. at 846 (*citing* Cal. Penal Code Ann. §3067(a)). Knights signed a probation agreement that required him to "[s]ubmit his ... person, property, place of residence, vehicle, personal effects, to search at anytime, [sic] with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *Knights*, 534 U.S. at 114.

other approved activities; restricting where he could live and work; prohibiting the possession and use of alcohol and non-prescription drugs (including possession by others in the home); prohibiting the purchase and possession of firearms; and many other very restrictive limitations on his liberty. *See* R. 46-3. Most importantly, it contained an absolute waiver of Fourth Amendment rights. It did not limit Beechler's consent to searches based on reasonable suspicion or probable cause. *Cf. United States v. Price*, 28 F.4th 739, 744, 750 (2022) (upholding warrantless search of parolee even where parole agreement required "reasonable cause to believe that the parolee is violating or is in imminent danger of violating a condition to remaining on parole").

Beechler unambiguously waived his rights under the Fourth Amendment. The waiver "clearly expressed the search condition" and "unambiguously informed" Beechler of it. *Knights*, 534 U.S. at 119. And the compliance check fell "squarely within the terms of the conditions of" Beechler's home detention contract—to check for violations of residency requirements, state and federal law, and other required conditions. *See White*, 781 F.3d at 864. In sum, Beechler's reasonable expectations of privacy were significantly diminished both by his status on home confinement and the agreement he made to participate in the program.

Finally, because assessing an individual's liberty interest "turns in large part on the extent of [the defendant's] legitimate expectations of privacy," the reasonableness analysis also "is shaped" by whether state law governing the terms of the home detention contract authorized the search condition. *White*, 781 F.3d at 861. Under Indiana law, "[a] probationer or community corrections participant may, pursuant to a valid

search condition or advance consent, authorize a warrantless premises search without reasonable suspicion." *State v. Vanderkolk*, 32 N.E.3d 775, 780 (Ind. 2015).

As for the government's interest, given the fact that Beechler was serving his sentence within the confines of his home, the state had an interest in supervising him to ensure compliance with the terms of his agreement, to prevent recidivism, protect the public from further criminal activity, and to monitor his reentry into society. *See Knights*, 534 U.S. at 120–21; *Price*, 28 F.4th at 749. The government's interest grew significantly as soon as it learned that Beechler might be committing drug crimes and skirting residency requirements. Preventing Beechler from being involved in illegal activity and monitoring his location were, after all, the very purpose for the home confinement agreement.

Beechler does not challenge the waiver as ambiguous or not express, nor does he deny its legality under Indiana law. Instead, he invites the court to apply the "stalking horse" theory (although he does not name it as such), based on the premise that "when a parole or probationary search operates as 'a subterfuge for a criminal investigation' to evade the Fourth Amendment's warrant and probable cause requirements, such searches 'violate[] the Fourth Amendment.'" *Price*, 28 F.4th at 750 (*quoting United States v. Stokes*, 292 F.3d 964, 967 (9th Cir. 2002)). However, we have made clear that when the rationale for a search relies on the ordinary, totality of the circumstances Fourth Amendment analysis, as it does here, there is no basis for examining the official purpose of the search and thus "the stalking horse theory has no application." *Price*, 28 F.4th at 752; *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in

ordinary, probable-cause Fourth Amendment analysis."). The MCCC and IMPD officers' motivations for initiating the compliance check are simply "irrelevant." *Price*, 28 F.4th at 752.

Given Beechler's exceptionally low expectation of privacy and the government's strong interest in his compliance with the terms of his home confinement, the totality of the circumstances test dictates that the search was reasonable within the meaning of the Fourth Amendment. We therefore affirm the district court's denial of Beechler's motion to suppress.

**B.**

Beechler also argues that the district court erred in denying his motion for a judgment of acquittal and motion for a new trial because the evidence was insufficient as a matter of law. "[W]e review a challenge to the sufficiency of the evidence to determine only whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the government." *United States v. Stewart*, 902 F.3d 664, 679 (7th Cir. 2018) (*citing United States v. Webster*, 775 F.3d 897, 904–05 (7th Cir. 2015)). "Great deference is afforded to jury verdicts," *United States v. Maldonado*, 893 F.3d 480, 484 (7th Cir. 2018), and thus, we will overturn a jury verdict for insufficiency of the evidence only if the record is "devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Stevenson*, 680 F.3d 854, 856 (7th Cir. 2012). This is a "nearly insurmountable burden." *Maldonado*, 893 F.3d at 484.

Beechler's sufficiency of the evidence argument depends on this court finding that the motion to suppress the evidence should have been granted. Beechler argues that if his motion

to suppress had been granted, the government would not have been able to prove all of the essential elements required to support a finding of guilt. Having determined that the district court properly denied his motion to suppress, however, we can consider this evidence in assessing the jury's verdict.

The government presented more than sufficient evidence of Beechler's guilt to support the jury's verdict on all counts. The evidence presented at trial was overwhelming. The jury heard Beechler's recorded interview in which he admitted to selling large quantities of drugs, aiming to make at least one thousand dollars for every pound of drugs he sold. Police seized 404.6 grams of a mixture or substance of methamphetamine from the home where Beechler was residing, and Beechler admitted that he was holding the drugs at the home for someone else in exchange for lodging. In addition to the drugs, police seized five firearms from the home which Beechler acknowledged he possessed to protect the drugs in the home. Additionally, the jury heard evidence of drug dealing and gun possession in the texts found on Beechler's phone. This is more than sufficient evidence to allow the jury's verdict to stand.

## C.

Beechler next contends that the district court committed reversible error by applying four different enhancements during sentencing, including enhancements for being a "manager or supervisor," for "maintaining a premises for the purpose of distributing controlled substances," for possessing five firearms, and the "career offender" enhancement. We review for clear error only the district court's findings of fact when applying a sentencing enhancement and accord "great deference" to those findings. *United States v. Lundberg*, 990 F.3d

1087, 1097 (7th Cir. 2021). A district court's factual findings at sentencing need only be supported by a preponderance of the evidence. *United States v. Galvan*, 44 F.4th 1008, 1012 (7th Cir. 2022). We reverse a district court's application of a sentencing enhancement "only if we are left with a definite and firm conviction that a mistake has been made." *United States v. Lovies*, 16 F.4th 493, 504 (7th Cir. 2021) (*quoting United States v. House*, 883 F.3d 720, 723 (7th Cir. 2018)). Although the Sentencing Guidelines are advisory, not mandatory, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *Gall v. United States*, 552 U.S. 38, 49 (2007) ("[T]he Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however."). The district court must then consider the arguments of the parties and the factors set forth in 18 U.S.C. §3553(a). *Id.* at 49–50.

The district court did not commit reversible error in applying the "manager or supervisor" sentencing enhancement to Beechler. Pursuant to U.S.S.G. §3B1.1(c), "[i]f the defendant was an organizer, leader, manager, or supervisor," the offense level increases by two. U.S.S.G. §3B1.1(c); U.S.S.G. §3B1.1(c) cmt. 2. A manager or supervisor in a criminal organization under §3B1.1 is "straightforwardly understood as simply someone who helps manage or supervise a criminal scheme." *House*, 883 F.3d at 724. To apply the enhancement, a court need only find that the defendant directed at least one other person. *United States v. Hernandez*, 309 F.3d 458, 463 (7th Cir. 2002). In applying this enhancement, the district court concluded that the evidence established that Beechler "was a substantial drug operator and not merely a menial." R. 140 at 10. The district court found that Beechler "was personally involved in the redistribution of substantial quantities of

drugs," and played a "leadership role" on at least one occasion when he "directed his cousin to make a drug delivery." *Id*. These factual findings were not clearly erroneous, so we uphold the district court's application of the "manager or supervisor" enhancement to Beechler.

Likewise, ample evidence supported the district court's application of the "drug premises" sentencing enhancement. Pursuant to U.S.S.G. §2D1.1(b)(12), "if the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance," the offense level increases by two. U.S.S.G. §2D1.1(b)(12). Maintaining a drug premises entails "own[ing] or rent[ing] [the] premises, or exercis[ing] control over them, and for a sustained period of time, us[ing] those premises to manufacture, store, or sell drugs, or direct[ing] others to those premises to obtain drugs." *United States v. Ford*, 22 F.4th 687, 694 (7th Cir. 2022) (*quoting United States v. Acosta*, 534 F.3d 574, 591 (7th Cir. 2008)).To exercise the requisite control, "the defendant does not necessarily need to have owned or rented the premises," so long as he was more than a "casual visitor." *Id.* A defendant maintains the premises for purposes of this enhancement even if others also have control of the premises. *Id*. Manufacturing or distributing controlled substances "need not be the sole purpose" for maintaining the premises but must be one of the defendant's "primary or principal uses for the premises." U.S.S.G. §2D1.1 cmt. n.17. In making a primary purpose determination, the court should consider the frequency with which the premises were used by the defendant for manufacturing or distributing controlled substances versus for lawful purposes. *Id*.

The district court found that Beechler stored large quantities of drugs meant for later sale, and that "he was given free lodging in exchange for safeguarding the drugs." R. 140 at 16. Thus, there can be no doubt that he exercised control over the premises, for a sustained period of time, and that he used those premises to store drugs intended for later sale. *See Ford*, 22 F.4th at 694. Indeed, but for his agreement to safeguard the drugs, he would not have been staying at the house. We see no error in the district court's application of the drug premises enhancement.

The district court did not commit reversible error in applying an enhancement for having five firearms to Beechler. Pursuant to U.S.S.G. §2K2.1(b)(1)(A), if the offense involved more than two but less than eight firearms, the defendant's offense level increases by two. U.S.S.G. §2K2.1(b)(1)(A). "To determine which guns, if any, should be considered 'involved in' the defendant's offense, sentencing courts apply the definition of 'relevant conduct' in U.S.S.G. §1B1.3." *United States v. Burnett*, 37 F.4th 1235, 1238 (7th Cir. 2022). These provisions—§2K2.1 and §1B1.3—read together, instruct a district court to apply the enhancement if the firearms were "involved in the same course of conduct or common scheme or plan as the offense of conviction." *Id*. at 1238–39 (*citing* U.S.S.G. §1B1.3(a)(2)). "That total includes not only the specific gun or guns which the defendant was convicted of possessing, but any firearm the possession of which qualifies as relevant conduct." *United States v. Ghiassi*, 729 F.3d 690, 694 (7th Cir. 2013).

The district court found ample evidence to conclude that all the guns were part of the same course of conduct or common scheme or plan, as the district court pointed out at

sentencing. R. 140 at 16 (noting that a "large quantity of drugs … [was] being stored at the residence … [Beechler] was given free lodging in exchange for safeguarding the drugs … and the guns … were located there as well"). This included even those guns that were stored in other parts of the house. Beechler admitted that he personally possessed the guns and acknowledged that the guns were at the home to protect the drugs. R. 119-2 at 13–14. All of the guns, therefore, were part of the same course of conduct or common scheme or plan, and the district court properly applied an enhancement for the five firearms Beechler possessed.

Beechler's final enhancement argument alleges that the district court erred in applying the career offender enhancement, but Beechler waived this argument by failing to properly develop it on appeal. *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("[P]erfunctory and undeveloped arguments … are waived.").[2] In his appellate brief, Beechler merely incorporated by reference the objections that he made below to the application of the career offender enhancement. (Beechler Brief at 29). ("Beechler timely objected to the career criminal determination … Beechler continued his objection in his supplemental briefing and *hereby incorporates the same as if fully set forth herein*."). However, "[t]he incorporation of arguments by reference in an appellate brief is forbidden." *Norfleet*

---

[2] The government contends that all of Beechler's sentencing enhancement challenges suffer from underdevelopment and incorporation by reference and are thus waived on appeal. (Government Brief at 24). We have given Beechler the benefit of the doubt despite under-developed arguments as to the other sentencing enhancements, but because Beechler only incorporated by reference his argument regarding the career criminal enhancement, we must consider it to be waived.

*v. Walker*, 684 F.3d 688, 690–91 (7th Cir. 2012). "It is not this court's responsibility to research and construct the parties' arguments." *Lanzotti*, 205 F.3d at 957 (7th Cir. 2000).

Even if Beechler had preserved this argument, the claim still fails. Pursuant to U.S.S.G. §4B1.1, a defendant is a career offender if "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. §4B1.1. Beechler contends that the prior felony conviction that the district court used to apply this enhancement does not qualify because he committed this felony when he was seventeen years old, and the case was improperly waived into adult court. A defendant cannot attack the validity of the previous state conviction used to enhance his federal court sentence unless it was obtained in a proceeding where the defendant was denied his right to counsel. *Harris v. United States*, 13 F.4th 623, 626 (7th Cir. 2021) (*citing Custis v. United States*, 511 U.S. 485, 496–97 (1994)).

Finally, even if Beechler were correct that the facts do not support the conclusion that these sentencing enhancements apply to him, we would still affirm his sentence because any error in applying these enhancements would be harmless. "Any error in calculating a total offense level is harmless when the district court makes clear that—considering the sentencing factors under 18 U.S.C. §3553(a)—it would have imposed the same sentence even if we were to conclude it had incorrectly calculated the Guidelines range." *Lovies*, 16 F.4th at 508. The district court confirmed that it would have

imposed the same sentence even if the enhancements did not apply. R. 140 at 42 ("[I] have fashioned a sentence that I believe is the one that I would choose, weighing all of the §3553(a) factors, regardless of the application of any one of the particular guideline provisions that were challenged."). Therefore, any remand to the district court for it to impose the same sentence would be "pointless." *See United States v. Jett*, 982 F.3d 1072, 1079 (7th Cir. 2020).

In addressing Beechler's challenge to the substantive reasonableness of the district court's sentencing decision, we look only at whether the district court abused its discretion. *Gall*, 552 U.S. at 51. A sentence within or below the Guidelines range is entitled to a rebuttable presumption of reasonableness. *United States v. Moore*, 851 F.3d 666, 674 (7th Cir. 2017). Beechler's sentence of 360 months was well below the bottom end of the Guideline recommendation of 420 months. R. 140 at 43–44.

To rebut this presumption, Beechler contends that his below-Guidelines sentence failed to adequately reflect the required §3553 factors. Section 3553(a) sets forth factors that the court should consider in imposing a sentence that is sufficient, but not greater than necessary, instructing the court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. §3553(a)(1). Beechler argues that consideration of §3553(a)(1) warrants a below-Guidelines sentence in his case because he has positive relationships in his life, a dependent who will be detrimentally impacted by his prolonged incarceration, and has a history of extensive reliance on illegal drugs which causes him to be untruthful and make bad decisions.

Beechler also argues that consideration of §3553(a)(6) warrants a below-Guidelines sentence in his case because his sentence was harsher than that of similarly situated offenders, contrary to §3553's instruction to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. §3553(a)(6). Beechler, however, does not cite any sentencing decisions involving similarly situated persons to support this proposition.

The district court thoroughly discussed the §3553(a) factors it considered in determining Beechler's sentence. R. 140 at 37–44. The court balanced Beechler's criminal history of violence, drugs, and guns, and the seriousness of his offense against his youthfulness, drug dependence, and potential for rehabilitation. *Id*. An appeal is not an occasion to second-guess a district court's weighing of the §3553(a) factors, particularly when a defendant receives a below-Guidelines sentence. *United States v. De La Torre*, 940 F.3d 938, 954 (7th Cir. 2019). The sentence the district court imposed was reasonable and well within the court's discretion.

For the foregoing reasons, we AFFIRM Beechler's convictions and sentence.