In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-2138

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

FREDERICK L. BREWER,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:22-cr-128 — **William C. Griesbach**, *Judge.*

_____

ARGUED OCTOBER 31, 2024 — DECIDED JULY 21, 2025

_____

Before SYKES, *Chief Judge*, and RIPPLE and LEE, *Circuit Judges*.

LEE, *Circuit Judge*. A jury found Frederick Brewer guilty of various offenses related to the sale and distribution of fentanyl. Specifically, Brewer was convicted of distributing fentanyl, possessing with the intent to distribute fentanyl, and participating in a conspiracy to do the same. At the same time, the jury indicated in the verdict form that the government had

failed to prove beyond a reasonable doubt that Brewer's conspiracy and possession convictions involved at least 40 grams of fentanyl. Based on this verdict form and other arguments as to the sufficiency of the evidence, Brewer twice moved for acquittal under Federal Rule of Criminal Procedure 29. The district court denied both motions. Brewer now appeals, arguing once again that the evidence was insufficient to support his convictions. He also contends that the district court erred in calculating the relevant drug quantity for purposes of sentencing. Because Brewer has failed to meet the high standard to overturn a jury verdict and the district court did not clearly err in its drug quantity determination, we affirm.

## I

## A

During its investigation into the illegal distribution of fentanyl in the form of fake "Percocet" pills (or "Percs") in Green Bay, Wisconsin, the Brown County Drug Task Force discovered that siblings Frederick Brewer and Don James, Jr., had sold such pills from their home in Green Bay from at least December 2021 until February 2022. Brewer and James eventually were charged with conspiracy to distribute and possess with intent to distribute fentanyl from approximately December 27, 2021, to February 9, 2022, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vi) (Count One) and with possession with intent to distribute fentanyl on or about January 9, 2022, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vi) and 18 U.S.C. § 2(a) (Count Two). Brewer was separately charged with distributing fentanyl on three occasions in January and February 2022 (Counts Three, Four, and Five), while James was charged with possessing fentanyl with the intent to

distribute on February 21, 2022, and June 14, 2022 (Counts Six and Seven).

Over the course of a three-day jury trial, the government presented evidence that James had negotiated with third-party sources to buy fentanyl pills in bulk and, together with Brewer, sold the pills as "Percocets" or "Percs." For example, James's flight records and text messages indicated that he had traveled to Arizona from January 6 through 9, 2022, to purchase thousands of Perc pills from a supplier. Other text messages showed that he had offered to sell the pills he had just acquired to other Green Bay dealers. In fact, the day after James returned from Arizona, Brewer posted, "Got the percs," on his Facebook page and continued to solicit buyers for the next several weeks. And, less than a week after James returned from Arizona, Brewer texted James requesting another supply of pills, saying: "Need 50 at least. N when you coming back to the house?"

The jury also heard from a confidential informant, who had purchased a total of thirty pills from Brewer on January 24, January 31, and February 7, 2022. The informant testified that, because she did not know Brewer personally, she had arranged the purchase through a "middler" who did. The informant accompanied the middler to meet Brewer either at his residence or in his car and obtained Perc pills from the middler after the middler's meeting with Brewer. The informant's testimony was corroborated by a slew of evidence, including testimony from Task Force agents who surveilled each buy, Brewer's numerous text messages with the middler, and Brewer's recorded jail call with his girlfriend naming the middler as the go-between with the informant.

The government also presented a recorded jail call between Brewer and James made the day after Brewer's arrest, during which Brewer told James that he "did exactly what [James] told [Brewer] to do" by hiding the pills in his "drawers," and that he needed to "dump that shit" to dispose of the pills. James replied, "You already know. You know what's going on."

In addition, agents testified that they had seized $5,000 from the defendants' sister, who had taken the cash from James's personal safe (which she opened with a code James gave her while in jail) to pay his cash bail. Among the cash were bills that the informant had paid to Brewer at the January 31 controlled buy.

At the close of the government's evidence, Brewer and James moved for acquittal under Rule 29. When the motion was denied, they elected not to present any evidence and concluded their case.

The jury found James and Brewer guilty of all counts. Moreover, in the process of deciding Counts One and Two, the jury found that James's convictions involved 400 grams or more of a mixture and substance containing fentanyl. But, as to Brewer, the jury did not believe that the government had proven beyond a reasonable doubt that he was responsible for selling even 40 grams or more of fentanyl.

After the verdict, the defendants renewed their motions for judgment of acquittal, which the district court summarily denied as to Counts Three to Seven. The court, however, took the defendants' request as to Counts One and Two under advisement. Regarding the former, both Brewer and James argued that the trial evidence was insufficient to establish a

conspiracy and reflected only a simple buyer-seller relation-ship. Brewer also argued that the evidence was insufficient to support a finding that he was guilty of possession with intent to distribute as alleged in Count Two, relying primarily on the jury's determination that the government had failed to prove that he was responsible for 40 grams or more of fentanyl.

In a subsequent written order, the district court denied the motions for acquittal on Counts One and Two. In doing so, it concluded that the evidence was "sufficient to establish that Brewer and James were not simply involved in a buyer/seller relationship, but that they were 'in business.'" The district court also rejected Brewer's contention that the jury's deter-mination that the government had failed to prove the thresh-old amounts undermined the guilty verdicts. The court rea-soned that Brewer's awareness of James's return to Green Bay with a large amount of fentanyl, coupled with Brewer's an-nouncement on Facebook that he "[g]ot the percs" upon James's return, sufficiently supported the "jury's conclusion that Brewer possessed at least some of the fentanyl James brought back from Arizona … with the intent to distribute as charged in Count Two of the indictment."

**B**

At sentencing, Brewer argued that he should only be held responsible for the fentanyl amount attributable to his distri-bution counts (Counts Three through Five), plus a single fen-tanyl pill that was found in his car when he was arrested. Be-cause the total drug quantity attributable to him was only 3.311 grams, Brewer posited, the corresponding base offense level under the United States Sentencing Guidelines should have been 12 instead of 32 as the Probation Office had recom-mended in the presentence report (PSR). After hearing from

the parties, the district court disagreed, finding that Brewer's involvement in a conspiracy with James made it reasonable to attribute 1.2 to 4 kilograms of fentanyl to him for sentencing purposes and adopted the guidelines calculation in the PSR.

Brewer's total offense level, combined with Brewer's criminal history category, produced a sentencing guideline range of 360 to 1,800 months of imprisonment. And, after considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the district court imposed a prison sentence of 144 months to be followed by 120 months of supervised release.

## II

On appeal, Brewer asserts once again that the government's evidence was insufficient to support his convictions. He also contends, to preserve his rights in the future, that the sentencing court erred by applying a base offense level corresponding to a drug weight that was seemingly at odds with the jury's verdict. We take each argument in turn.

## A

When evaluating a defendant's challenge to the sufficiency of the government's evidence to support his conviction, we start with a reminder that "[g]reat deference is owed to the jury's verdict." *United States v. Hofschulz*, 105 F.4th 923, 931 (7th Cir. 2024) (citing *United States v. Beechler*, 68 F.4th 358, 368 (7th Cir. 2023)). We therefore limit our inquiry only to "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). "This highly demanding standard is rightly

characterized as imposing a nearly insurmountable burden." *Hofschulz*, 105 F.4th at 932 (internal quotation marks omitted). Accordingly, "[w]e do not reweigh the evidence and may uphold verdicts entirely based on circumstantial evidence." *United States v. O'Leary*, 957 F.3d 731, 733 (7th Cir. 2020).

### 1. Conspiracy (Count One)

We first address Brewer's conviction for conspiracy to distribute and possess with intent to distribute fentanyl. To prove a drug-distribution conspiracy, the government must show that "the defendant knowingly agreed, at least implicitly, to distribute drugs with another." *United States v. Page*, 123 F.4th 851, 859 (7th Cir. 2024) (en banc). And, as Brewer correctly points out, "evidence showing only that two people are in a buyer-seller relationship is insufficient to prove a drug-distribution conspiracy." *Id.* (internal quotation marks omitted). Instead, the government must present "evidence establishing an agreement to distribute drugs that is distinct from evidence of the agreement to complete the underlying drug deals." *United States v. Wright*, 85 F.4th 851, 861 (7th Cir. 2023) (internal quotation marks omitted). Put another way, the government must show that the co-conspirators had "a stake in the venture" and exhibited "informed and interested cooperation." *Direct Sales Co. v. United States*, 319 U.S. 703, 713 (1943).

We have previously taken a "totality-of-the-circumstances" approach to distinguish between these two types of relationships, often invoking "rules of thumb" such as "sales on credit or consignment, an agreement to look for other customers, a payment of commission on sales, an indication that one party advised the other on the conduct of the other's business, or an agreement to warn of future threats to each other's

business stemming from competitors or law-enforcement authorities." *United States v. Vizcarra-Millan*, 15 F.4th 473, 507 (7th Cir. 2021) (internal quotation marks omitted). But, as we have recently held, these "rules of thumb" are just that, and it is not necessary for the government to prove all, some, or even any of the factors, so long as there is evidence of a mutual agreement to distribute drugs. *See Page*, 123 F.4th at 861–62 (overruling *United States v. Colon*, 549 F.3d 565 (7th Cir. 2008), and holding that evidence of repeated, distribution-quantity transactions of illegal drugs alone is sufficient to sustain a drug-trafficking conspiracy conviction).

Here, when viewed in the light most favorable to the government, the record contains evidence from which a reasonable jury could find that Brewer and James had engaged in a joint venture to purchase and resell fentanyl. Take, for example, Brewer's communications with a potential buyer indicating that he was privy to not only James's travel to and from Arizona to purchase drugs, but also the "load" of "percs" pills that James had in tow. Furthermore, the day after James returned from Arizona, Brewer posted on his Facebook that he "got the percs." And Brewer continued to solicit buyers on Facebook while texting James when he needed more inventory. What is more, bills that Brewer had obtained in exchange for Perc pills were found in the money their sister took out of James's safe to bail James out of jail. And, while Brewer was in jail, he called James to tell him that he had followed James's instructions to hide the drugs in his crotch if he was ever arrested. From these facts, a reasonable jury could find that Brewer and James were engaged in a joint venture to distribute fentanyl.

Resisting this conclusion, Brewer points to the jury's determination on the verdict form that the government had failed to prove that Brewer's participation in the conspiracy involved 40 grams or more of fentanyl. As he sees it, these findings indicate the jury's belief that the government had failed to prove a conspiracy altogether. But this is baseless extrapolation. Section 841(a)(1) of Title 21 proscribes the distribution or possession with intent to distribute a controlled substance of *any* amount, and Section 846 prohibits a person from entering a conspiracy to do the same. *See* 21 U.S.C. §§ 841(a), 846. Here, the jury found sufficient evidence to convict Brewer of both conspiracy and possession with intent to distribute *some* amount of fentanyl—just not enough to satisfy the threshold amounts necessary to trigger the mandatory minimum terms of imprisonment set forth in 21 U.S.C. § 841(b)(1)(A)(vi) and (B)(vi).

Brewer also contends that the government's evidence of a drug-distribution conspiracy was speculative and unreliable. For example, he decries the government's failure to present the middler as a witness at trial. But "[o]ur task is not to 'reweigh the evidence or invade the jury's province of assessing credibility.'" *United States v. Peterson*, 823 F.3d 1113, 1120 (7th Cir. 2016) (quoting *United States v. Pribble*, 127 F.3d 583, 590 (7th Cir. 1997)). We will overturn a jury's verdict "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id*. (citation modified). Such is not the case here.

### 2. Possession (Count Two)

Turning to Brewer's possession conviction, the government argued to the jury that Brewer had aided and abetted

James's (1) knowing and intentional possession of fentanyl, (2) with intent to distribute it, (3) while knowing it was a controlled substance. *See United States v. Irby*, 558 F.3d 651, 654 (7th Cir. 2009); *see also* 21 U.S.C. § 841(a)(1). In support, the government presented evidence that Brewer was aware of the purpose of James's trip to Arizona and that Brewer solicited buyers for Perc pills soon after James's return to Green Bay. The jury reviewed the evidence and found Brewer guilty of possession with the intent to distribute.

Brewer insists that the jury got it wrong. According to him, the multiple posts he published on Facebook following James's trip to Arizona (including "got the percs," "Who wants percocet," "I got them percs if you know who looking," "Wassup with dem percs out there") amount to nothing but mere chatter. This is a perplexing argument, not the least because we find it hard to fathom why anyone would repeatedly offer to sell an illegal substance on a social media platform, unless they were actually doing so. At any rate, there was more evidence than this. For example, the government orchestrated controlled buys of fentanyl pills at an address linked to Brewer and James. And Brewer provided that same address to another potential purchaser the day James returned from Arizona. We decline to disturb the jury's verdict on this record.

### 3. Distribution (Counts Three, Four, and Five)

Brewer also challenges his distribution convictions for each of the controlled buys, arguing that the middler, who was the sole person that directly dealt with Brewer during these transactions, did not testify at trial. As for the confidential informant who purchased the pills, Brewer discounts her

credibility due to her supposed allegiance to the government and her inability to identify him at each controlled buy.

As an initial matter, we reject Brewer's request to "reweigh the evidence or invade the jury's province of assessing credibility." *Peterson*, 823 F.3d at 1120 (internal quotation marks omitted). But we also stress that the government's case was replete with evidence that, taken as a whole, sufficiently demonstrated that Brewer knowingly distributed fentanyl and knew that it was a controlled substance. *See* 21 U.S.C. § 841(a)(1). At each of the controlled buys, the informant and the middler purchased ten pills from Brewer. The controlled buys in January took place at James's and Brewer's address. Brewer's phone contained messages he exchanged with the middler between January 24 and 31 about the sale of drugs. For the February 7 controlled buy, which took place at the middler's address, police officers identified Brewer after the transaction through personal and video surveillance. A rational trier of fact presented with this record could easily find Brewer guilty of all three distribution counts.

**B**

Finally, Brewer contends that the sentencing court improperly considered acquitted conduct when calculating his guidelines range. As Brewer sees it, because the verdict form effectively acquitted him of conspiracy and possession involving 40 grams or more of fentanyl, the district court erred in attributing 1.2 to 4 kilograms of fentanyl to him for sentencing purposes. Instead, Brewer insists, the correct drug quantity should have been less than 4 grams of fentanyl—thirty pills from the controlled buys and the single pill found in his car—which would have put him at a substantially lower guidelines range.

At the same time, Brewer concedes that this argument is foreclosed by *United States v. Watts*, 519 U.S. 148 (1997), where the Supreme Court held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Id*. at 157. We have followed suit. *See United States v. Robinson*, 62 F.4th 318, 320–21 (7th Cir. 2023); *United States v. Thurman*, 889 F.3d 356, 371 (7th Cir. 2018). Accordingly, Brewer states that he only raises this argument to preserve it, and we affirm the district court's sentencing determination.[1]

### III

For the foregoing reasons, Brewer's conviction and sentence are AFFIRMED.

---

[1] We recognize that the 2024 edition of the United States Sentencing Guidelines includes an amendment clarifying that "[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." U.S. SENT'G GUIDELINES MANUAL § 1B1.3(c) (U.S. SENT'G COMM'N 2024). This amendment does not apply to Brewer, as courts are directed to "use the Guidelines Manual in effect on the date that the defendant is sentenced." *Id*. § 1B1.11(a). Brewer was sentenced on May 24, 2023, while the 2024 edition of the Guidelines went into effect on November 1, 2024. And there is no indication that this amendment applies retroactively.