In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3033

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCUS CURLIN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:09-cr-29-SEB-KPF—**Sarah Evans Barker**, *Judge.*

ARGUED FEBRUARY 25, 2011—DECIDED APRIL 25, 2011

Before EASTERBROOK, *Chief Judge,* and FLAUM and ROVNER, *Circuit Judges*.

FLAUM, *Circuit Judge.* In June 2008, Marcus Curlin stopped paying rent on his Indianapolis residence. Five months later, his landlord obtained an eviction order in an Indiana court requiring Curlin to vacate the property by November 17, 2008. He did not. After Curlin had flouted the order for over two weeks, officers came to the residence to execute the eviction order. There, they

discovered marijuana and guns in plain view. Curlin, who had two prior felony convictions, was arrested and charged with possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Following the denial of his motion to suppress the guns, Curlin entered a conditional plea of guilty to the charges, reserving his right to appeal the district court's refusal to suppress the gun evidence. On appeal, Curlin argues that the district court abused its discretion in denying his motion to suppress without an evidentiary hearing. Because Curlin has failed to identify any disputed issues of fact that affect the outcome of the motion, we affirm the judgment of the district court.

## I. Background

On October 17, 2008, Curlin's landlord filed a small claims action against Curlin in Franklin Township, Indiana, seeking possession of Curlin's leased residence for failure to pay rent. A Notice of Claim for Possession of Real Estate and Summons were served on Curlin by mail and by delivery to his residence. The summons ordered Curlin to appear in court on November 5, 2008. When Curlin did not appear as ordered, the case was continued until November 12, 2008, and notice of the new court date was mailed to him. Curlin again failed to appear. The small claims court then entered judgment in favor of the landlord. The court clerk issued a Writ of Restitution and Notice to Move on November 14, 2008. The Writ—which essentially was an eviction order—ordered Curlin to vacate the property on or before

6:00 p.m. on November 17, 2008. The Writ further ordered "any constable of Marion County" to put the landlord in possession of the residence, and to remove Curlin and his belongings from the property. Finally, the Writ authorized officers to sell any of Curlin's non-exempt property to satisfy the court's restitution order.

Constables twice attempted to personally serve the Writ on Curlin. First, on November 15, 2008, constables left a copy of the Writ on the door of Curlin's residence. On November 24, 2008, constables made a second attempt to serve the Writ. Again they left a copy on the door because, despite the fact that the lights were on in the residence, no one answered the door.

Also on November 24, 2008, an unsigned "Letter to Judge" was filed in the small claims court, stating: "Contents of property 11/19/08 3,000 sq. ft. fully furnished 4 Br. Several flatscreen TVs, laptops, police found SKS assault rifle and weed in the house. IMPD." According to the government, "IMPD" may refer to the Indianapolis Metropolitan Police Department.

Constable Bob Walden, with the assistance of officers from the warrant section of the Marion County Sheriff's Department, executed the Writ on December 2, 2008. Prior to carrying out the eviction, the Sheriff's Department ran a criminal history check on Curlin and learned that he had two prior felony convictions. When the officers arrived at the residence, Walden knocked and announced his presence. Curlin answered the door a few minutes later and Walden explained the purpose of their visit. Officers then entered the residence, secured

Curlin in the entryway, and conducted what the government characterizes as a "safety sweep" of the home. That sweep extended to the upstairs master bedroom, where officers found a plastic bag containing approximately 15 grams of marijuana on the bed. Deputies also entered the walk-in closet of the master bedroom, where they discovered a rifle and a 12-gauge shotgun, on a shelf. After seizing the drugs and firearms (which federal law prohibited Curlin, a convicted felon, from possessing), officers arrested Curlin and advised him of his *Miranda* rights. Curlin then informed the deputies that a third firearm, a .38 revolver, was in the home, which police also seized.

On February 24, 2009, Curlin was charged in a three-count indictment with possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Curlin moved to suppress the evidence seized on December 2 on the ground that it was obtained during an unreasonable search in violation of his Fourth Amendment rights. After full briefing but without a hearing, the district court issued an order denying the suppression motion. That order includes the following findings of fact:

> Constable Walden had received information that Curlin had made statements to deputy constables threatening to disobey the court order and to barricade himself in the residence and shoot it out with the police with a high-powered rifle. Also, deputy constables who were at the residence on a previous date to discuss eviction paperwork with Curlin had observed a rifle in plain view in the living room.

The order denies the motion on two grounds. First, the court determined that the protective sweep was not unreasonable in light of the officers' legitimate safety concerns, and that the seizures were justified by the "plain-view" doctrine. Second, the court concluded that even if the protective sweep exceeded the bounds of reasonableness, exclusion of the evidence was not required because the officers inevitably would have discovered it by lawful means in carrying out the eviction order.

Following the denial of his suppression motion, Curlin pled guilty, on the condition that he be permitted to appeal the denial of the motion. The district court accepted the plea agreement on August 17, 2010, and sentenced Curlin to 100 months of imprisonment, followed by three years of supervised release. Curlin timely appealed the denial of his suppression motion.

## II. Discussion

Curlin argues that the district court erred in denying the motion to suppress without an evidentiary hearing. According to Curlin, an evidentiary hearing would have resolved certain disputed facts in his favor, and demonstrated that an unreasonable search of his home occurred, in violation of the Fourth Amendment.

We review the denial of an evidentiary hearing on a motion to suppress for abuse of discretion. *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007). District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are

disputed issues of material fact that will affect the outcome of the motion. *Id.* (citations omitted). In order to be granted an evidentiary hearing, the defendant's allegations and moving papers must be "sufficiently definite, specific, non-conjectural and detailed." *Id.* The defendant bears the burden of both identifying a definite disputed factual issue, and demonstrating its materiality. *Id.* (citations omitted).

In an effort to meet that burden, Curlin points to two allegedly disputed facts—(1) whether Constable Walden had received information that Curlin threatened to resist eviction and shoot it out with the police, and (2) whether officers previously observed a rifle in plain view in Curlin's living room. To determine whether the disputed facts are material—meaning whether either affects the outcome of the motion—we analyze Curlin's Fourth Amendment claim on the assumption that both facts are false. If Curlin's claim nevertheless fails, then the disputed facts are not material to the resolution of the suppression motion, and Curlin was not entitled to an evidentiary hearing.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. . . ." U.S. CONST. amend. IV. Fourth Amendment claims present two distinct questions: (1) whether a search or seizure actually occurred; and (2) if so, whether the search or seizure was unreasonable. *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010).

Our first task is to determine whether the protective sweep, which is the focus of Curlin's claim, constituted

a search for purposes of the Fourth Amendment. *Kyllo v. United States*, 533 U.S. 27, 31 (2001). A search takes place when governmental action infringes upon an individual's legitimate expectation of privacy, meaning a subjective expectation of privacy that society is prepared to consider reasonable. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

The Fourth Amendment explicitly protects the house, and entry by officers into a home is generally considered a search. *But see Kyllo*, 533 U.S. at 33 (noting that "a Fourth Amendment search does *not* occur—even when the explicitly protected location of a *house* is concerned—unless 'the individual manifested a subjective expectation of privacy in the object of the challenged search,' and 'society [is] willing to recognize that expectation as reasonable'") (emphasis in original) (citation omitted). But there is a key distinction in this case—Curlin had no lawful right to be in the residence he was occupying on December 2, 2008. Curlin had been evicted over two weeks earlier following an action in Indiana court, and had been given notice of his eviction when officers twice left copies of the eviction order at the residence. Like a "burglar plying his trade in a summer cabin during the off season," Curlin's presence was "wrongful," and consequently any subjective expectation of privacy he may have had is not "one that society is prepared to recognize as 'reasonable.'" *Rakas v. Illinois,* 439 U.S. 128, 143-44, n.12 (1978) (citations omitted). Because Curlin had no legitimate expectation of privacy in the residence, no Fourth Amendment search occurred.

Our conclusion is consistent with previous decisions of our sister circuits that individuals who occupy a piece of property unlawfully have no claim under the Fourth Amendment. *See United States v. Struckman*, 603 F.3d 731, 746 (9th Cir. 2010) (trespassers cannot claim the protections of the Fourth Amendment); *United States v. Washington*, 573 F.3d 279, 284 (6th Cir. 2009) (same); *United States v. Sanchez*, 635 F.2d 47, 64 (2d Cir. 1980) (same); *Amezquita v. Hernandez-Colon*, 518 F.2d 8, 11 (1st Cir. 1975) (squatters formally evicted from public land had no expectation of privacy in homes they unlawfully constructed there); *United States v. Ruckman*, 806 F.2d 1471, 1472-74 (10th Cir. 1986) (individual lacked reasonable privacy expectation in cave in which he resided on federal land); *United States v. Gale*, 136 F.3d 192, 195 (D.C. Cir. 1998) (individual lacked legitimate expectation of privacy in apartment he occupied without permission of its tenant or other legal authority); *United States v. Rambo*, 789 F.2d 1289, 1295-96 (8th Cir. 1986) (hotel occupant who was asked to leave by police officers acting on behalf of hotel management no longer had a reasonable expectation of privacy in the hotel room). Had Curlin's landlord not obtained an eviction order of which Curlin had notice, the analysis would be different. *See Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 859 (7th Cir. 1999) (where officers attempting to serve tenants with a summons in landlord's eviction action conducted a warrantless search, tenants could maintain Fourth Amendment claim because landlord had not yet obtained a valid order granting him exclusive possession of the premises); *Washington*, 573 F.3d at 284 (tenant

retains objectively reasonable expectation of privacy despite being in technical violation of lease until landlord takes legal action to evict); *United States v. Young*, 573 F.3d 711, 720 (9th Cir. 2009) (individual had reasonable expectation of privacy in hotel room from which he had not been evicted at the time of the warrantless search). But given that Curlin had notice that his continued occupancy had been adjudged to be unlawful, we have no difficulty concluding that he lacked any objectively reasonable expectation of privacy in the premises. Thus, no illegal search occurred requiring the suppression of the gun evidence.

While Curlin focuses on the existence of a search, we note that a Fourth Amendment claim based on the warrantless seizure of the evidence would be equally unsuccessful, as the items were validly seized under the "plain-view" doctrine. That doctrine justifies a warrantless seizure when three conditions are met. First, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. *Horton v. California*, 496 U.S. 128, 136 (1990). Second, the incriminating character of the evidence in plain view must be immediately apparent. *Id.* Third, the officer must have "a lawful right of access to the object itself." *Id.*

As discussed above, the officers did not violate the Fourth Amendment in entering the master bedroom and closet, where it is undisputed that the guns sat in plain view. And the Writ of Restitution gave the officers the legal right to enter the residence by ordering them to

put the landlord in possession of the premises, and to remove Curlin and his belongings from the property. Therefore, they were in the bedroom and closet lawfully when they viewed the evidence. The incriminating nature of an object is "immediately apparent" if, under the circumstances, the officer has "probable cause to believe that the item is linked to criminal activity." *United States v. Bruce*, 109 F.3d 323, 328 (7th Cir.1997). The officers learned that Curlin was a convicted felon before arriving at the residence. Federal law prohibits felons from possessing firearms, and consequently the incriminating character of the guns would have been immediately apparent to the officers. *See United States v. Cooper*, 19 F.3d 1154, 1163 (7th Cir. 1994). Finally, the Writ ordered officers to remove all of Curlin's belongings and to sell any non-exempt property to satisfy the restitution order. Therefore, the officers had a lawful right of access to the objects themselves.

An evidentiary hearing was not necessary in this case because, even construing the disputed facts in Curlin's favor, his Fourth Amendment claim fails for the reasons stated above. Thus, Curlin has failed to identify any disputed issues of *material* fact, and the district court did not abuse its discretion by declining to hold an evidentiary hearing.

### III. Conclusion

We AFFIRM the judgment of the district court.