In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1327

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CORY S. CASTETTER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Fort Wayne Division.
No. 1:14-CR-44-TLS — **Theresa L. Springmann**, *Chief Judge.*

ARGUED JUNE 2, 2017 — DECIDED AUGUST 4, 2017

Before FLAUM, EASTERBROOK, and KANNE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* With the authority of a warrant, see *United States v. Jones*, 565 U.S. 400 (2012), police installed and monitored a GPS locator on a car owned and driven by Mark Holst. They were investigating Holst's participation in methamphetamine sales and wanted to know, among other things, where he was getting the drug. The GPS device had the ability to transmit data so that the car could be traced in real time. Police tracked Holst's car on Septem-

ber 4, 2014, and learned that it had stopped at a particular place for more than an hour. An informant told the police that Holst had traveled to buy methamphetamine. Police stopped Holst's car as he was driving home and found some of that drug. They relayed the information to other officers, who applied for a warrant to search the house in whose driveway Holst's car had lingered. That house turned out to be Cory Castetter's. The search turned up methamphetamine, other drugs, and approximately $62,000 in cash.

Prosecuted under federal law, 21 U.S.C. §841(a)(1), Castetter moved to suppress the evidence found when the police executed the second warrant. He did not dispute the validity of the first warrant or the existence of probable cause to support the second warrant, but he contended that information derived from the first warrant should be ignored—and, if it is ignored, the second warrant would lose its foundation. Castetter observed that Holst lives in Michigan, where the first warrant issued, while he lives just across the border in Indiana. As Castetter saw things, Michigan's police lack authority to monitor the location of a car in Indiana, no matter what the Michigan warrant says. Castetter's fallback argument is that the first warrant pertains to Holst, not him, and that police (whether from Michigan or Indiana) were forbidden to learn who was doing business on his property without obtaining a warrant based on his own activities. The district court rejected these arguments and denied the motion. 115 F. Supp. 3d 968 (N.D. Ind. 2015). Castetter then entered a conditional plea of guilty, reserving the right to raise the suppression argument on appeal, and was sentenced to 108 months' imprisonment.

The problem with Castetter's principal argument is that the Fourth Amendment does not concern state borders. It reads: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Nothing there about state lines. The Constitution demands that a warrant be supported by probable cause, an oath, and particularity. As we have already mentioned Castetter does not deny that these requirements were satisfied.

States may decide as a matter of domestic law not to authorize their police to acquire information extraterritorially, but federal courts do not use the exclusionary rule to enforce state-law doctrines. See *Virginia v. Moore*, 553 U.S. 164 (2008). States also may elect to ignore information given to them, by other states' officers, about what happens within their territory. As far as the Fourth Amendment is concerned, the Indiana judge who was asked to issue the second warrant could have said: "I don't think that the Michigan police have any business insinuating their GPS locators into this state, so I refuse to issue a warrant." But the Indiana judge did not say that. So we have not only the principle of *Moore* that violations of state law do not justify suppression in federal prosecutions, but also the (implicit) decision of the Indiana judge that there was no problem, as a matter of Indiana's law, in using information about Indiana sent to police in Michigan.

Information about Holst's driving (and stopping) went by radio to a receiver connected to the Internet. We do not know the receiver's location (it may have been a satellite or a

cell-data node), but the Internet transcends state borders—and the GPS satellites, all launched and operated by the U.S. Air Force, are in orbit 12,540 miles high, well beyond any state's domain. The process of tracking a car's location by GPS does not offend any state's sovereign rights; this prosecution cannot founder on the theory that the drug laws, or the GPS system, exceed the national power to legislate, regulate, or investigate. Compare *Bond v. United States*, 134 S. Ct. 2077 (2014), with *Gonzales v. Raich*, 545 U.S. 1 (2005). The national government, not any state, regulates radio, interstate computer networks, and the GPS system.

Castetter's fallback argument is equally weak. True, the first warrant was not based on information about Castetter. But neither did it authorize anyone to learn about the inside of his home, as the infrared device did in *Kyllo v. United States*, 533 U.S. 27 (2001). All the police learned by monitoring the GPS device was the location of Holst's car, and Castetter lacked a privacy interest in that location.

Suppose that instead of getting a warrant to track Holst's car, police had persuaded him to become an informant and report what happened inside Castetter's house. Suppose, indeed, that Holst had agreed to wear a camera and an audio recorder, providing many facts about Castetter's house and comprehensive details about the transaction. That would not have violated any of Castetter's rights. See, e.g., *Hoffa v. United States*, 385 U.S. 293 (1966). Or suppose Castetter had given Holst documents revealing specifics of his drug operations, and the police later had stopped Holst without either probable cause or a warrant. Castetter could not object, because the privacy invaded would have been Holst's rather than Castetter's. See *United States v. Payner*, 447 U.S. 727 (1980);

*Rawlings v. Kentucky*, 448 U.S. 98 (1980). But the police did none of these things. They obtained a location-tracking warrant and learned no more than where Holst had driven his car. The Constitution is not offended if, by executing a warrant to search one person (such as Holst), police learn incriminating details about another (such as Castetter).

AFFIRMED