In the

# United States Court of Appeals

### For the Seventh Circuit

───────────────

No. 23-2427

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCUS T. DIXON,

*Defendant-Appellant.*

───────────────

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:21-cr-40020-SLD-JEH-1 — **Sara Darrow**, *Chief Judge*.

───────────────

ARGUED SEPTEMBER 17, 2024 — DECIDED MAY 7, 2025

───────────────

Before EASTERBROOK, HAMILTON, and MALDONADO,
*Circuit Judges*.

HAMILTON, *Circuit Judge*. In 2019 defendant-appellant
Marcus Dixon was on supervised release after a federal prison
sentence. The United States Probation Office that was
supervising him obtained a warrant to arrest him based on his
suspected involvement in a hit-and-run accident and drug
dealing. After arresting Dixon, probation officers invoked a
condition of his supervised release that authorized

warrantless searches of his property under certain conditions. On the day Dixon was arrested, officers conducted a series of searches of a Pontiac, a cellphone, a home in Silvis, Illinois, an Audi, and a duffel bag. Each search built on information learned in the prior searches. The officers found text messages discussing the distribution of cannabis, several handguns and ammunition, and drug paraphernalia. Based on this evidence and evidence about the earlier hit and run, Dixon was convicted on two counts each of possessing narcotics with intent to distribute, possessing a firearm in furtherance of a drug trafficking crime, and being a felon in possession of a firearm. He moved to suppress all the evidence obtained in the searches conducted on the day he was arrested, arguing that the searches had exceeded the scope authorized by his supervised release search condition. The district court denied his motion, and Dixon challenges that decision on appeal.

Our review of the district court's decision is complicated by the fact that both parties failed to submit actual evidence supporting the factual assertions in their briefs on the motion to suppress. We therefore find significant gaps in the record. In denying Dixon's motion, the district court appears to have relied substantially on the government's unsupported statement of facts. During oral argument before this court, the government told us that courts in the Central District of Illinois regularly rely on one party's unsupported statement of facts to decide motions to suppress, so long as those facts are not disputed by the other party. We do not have before us a clear and complete picture of how this practice works. But whatever efficiency gains might be achieved by this practice, it does not, in the absence of a clear stipulation of facts, produce a proper evidentiary basis for a district court's factual findings or for appellate review.

Still, although the pretrial record is less complete than we might wish, we ultimately affirm the denial of the motion to suppress. Dixon failed to offer evidence on the threshold issue of his Fourth Amendment standing, i.e., that he had legitimate expectations of privacy in the places and items searched. As a result, he cannot challenge any of the allegedly unconstitutional searches. Further, the record we have shows that at least the searches of the Pontiac and the cellphone were reasonable and permissible under the terms of Dixon's supervised release.

I.  *Factual and Procedural Background*

During the early hours of October 20, 2019, an Illinois state trooper saw a gray Mitsubishi crash into another car. The Mitsubishi's driver immediately left the car and ran away. Searches of the car found a photograph of Dixon, a rental agreement in the name of Dixon's mother, three guns, a box of ammunition, three clear baggies of suspected crack cocaine, a scale, a shoebox with several bags of suspected cannabis, and a car key with an Audi logo. Shortly after the crash, the state trooper identified Dixon as the driver of the car. The Rock Island Police Department contacted the Probation Office to report Dixon as a suspect in a hit and run.

Based on the investigation of the hit and run, the federal Probation Office requested and received an arrest warrant for Dixon and petitioned to revoke his supervised release. The petition cited three violations of law: leaving the scene of an accident, possessing a firearm, and possessing a controlled substance. The Probation Office arranged for Dixon to meet his probation officer on December 18 and planned to search Dixon and his property for any contraband during the appointment. On December 18, officers saw Dixon arrive at

the Probation Office in a purple Pontiac. After Dixon entered the building, officers arrested him on the warrant and searched him. On his person, the officers found a key ring with three keys: two regular keys and one electronic remote key bearing an Audi logo.

The probation officers then invoked a condition of Dixon's supervised release authorizing warrantless searches of his property. Officers searched the Pontiac that Dixon had driven to the courthouse. They found a locked cellphone, a marijuana cigarette, and a small scale. The officers returned to the office and asked Dixon for the passcode for the phone. He refused to answer, but officers correctly guessed the passcode. They searched the cellphone's text messages, internet search history, social media accounts, and photo gallery. They found two categories of incriminating evidence: (1) text messages discussing the distribution of cannabis and telling unnamed recipients to come to an address in Silvis, Illinois, and (2) pictures and videos depicting Dixon with large amounts of cannabis or a white Audi with a specific license plate.

The probation officers split up. One group searched the East Moline house where Dixon had told his probation officer he was living. Dixon does not challenge the legality of that search. Another group went to the house in Silvis mentioned in Dixon's text messages. Officers used another key on Dixon's key ring to unlock the front and back doors. They also found the white Audi pictured in the phone's photo gallery in a parking area behind the Silvis house and used Dixon's car key to unlock it. Inside the car, they found a duffel bag on the backseat. Inside the duffel bag, they found two vacuum-sealed bags of suspected cannabis, a handgun, and a baggie of ammunition.

Dixon was later charged with two counts of possessing drugs with intent to distribute (counts 1 and 4), two counts of possessing a firearm in furtherance of a drug trafficking crime (counts 2 and 5), and two counts of being a felon in possession of a firearm (counts 3 and 6). Counts 1, 2, and 3 arose from the October 20 hit and run. Counts 4, 5, and 6 arose from the December 18 searches.

Dixon has not challenged the evidence seized from the October 20 hit and run, but he moved to suppress the evidence seized on December 18 from the Pontiac, cellphone, Silvis house, Audi, and duffel bag. He argued that the warrantless searches exceeded the scope authorized by his supervised release search condition and thus violated the Fourth Amendment. He argued that once he was arrested, probation officers needed a warrant to conduct the challenged searches. Dixon also requested an evidentiary hearing. The government argued that Dixon had abandoned any reasonable expectation of privacy in the places and items searched and therefore lacked standing to challenge any of the searches. It also argued that all the warrantless December 18 searches were lawful under the search condition in Dixon's supervised release order.

The district court denied Dixon's request for an evidentiary hearing. On the merits the court denied his motion to suppress the evidence discovered in the December 18 searches. It concluded that Dixon did not have a legitimate expectation of privacy in any of the items or places searched and that all the searches were supported by reasonable suspicion to believe contraband connected to the October 20 hit and run would be found.

Dixon went to trial. A jury found him guilty on all six counts. The district court sentenced him to 260 months in prison. Dixon has appealed, challenging only the denial of his motion to suppress as it affects counts 4, 5, and 6.

## II. *Standard of Review*

On appeal, Dixon argues that he had a legitimate expectation of privacy in the Pontiac, cellphone, Audi, Silvis house, and duffel bag, and that all the December 18 searches were unreasonable. He also challenges the district court's denial of his request for an evidentiary hearing.

A district court's denial of a motion to suppress entails mixed questions of fact and law. We "review factual determinations for clear error and legal questions de novo." *United States v. Carlisle*, 614 F.3d 750, 754 (7th Cir. 2010). "Determinations of probable cause and reasonable suspicion are normally mixed questions of fact and law, but when 'what happened?' is not at issue, the ultimate resolution of whether probable cause or reasonable suspicion existed is a question of law which we review de novo." *Id.*; accord, *Bufkin v. Collins*, 604 U.S. ___,___, 145 S. Ct. 728, 740 (2025), first citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996) (holding de novo review applies to findings of probable cause and reasonable suspicion under Fourth Amendment), and then citing *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 583 U.S. 387, 396 n.4 (2018). We review for abuse of discretion the denial of an evidentiary hearing on a motion to suppress. *United States v. Black*, 104 F.4th 996, 1001 (7th Cir. 2024).

III. *Legitimate Expectations of Privacy*

Fourth Amendment rights are personal. They may not be asserted vicariously, on behalf of others. *Carlisle*, 614 F.3d at 756, citing *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). An accused defendant seeking to suppress evidence obtained from an allegedly unconstitutional search bears the burden of establishing that the search violated his own Fourth Amendment rights. *Id.* at 758, citing *United States v. Salvucci*, 448 U.S. 83, 95 (1980). This is a question of substantive Fourth Amendment law, but courts often refer to it as a question of standing. E.g., *United States v. Walton*, 763 F.3d 655, 658 (7th Cir. 2014), citing *Rakas*, 439 U.S. at 133. A defendant has standing to challenge a search only if he has a "legitimate expectation of privacy" in the searched area. *Carlisle*, 614 F.3d at 758. "A legitimate expectation of privacy exists when the defendant exhibits a subjective expectation of privacy and the expectation is one that society is prepared to recognize as reasonable." *United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003). Only Dixon's subjective expectations of privacy are at issue in this case.

The district court gave two reasons for finding that Dixon lacked standing to challenge the December searches. First, the court found that prior to those searches, Dixon had made statements disassociating himself from the Pontiac, the cellphone, the Silvis house, and the Audi. Based on those statements, the court held that Dixon lacked a subjective expectation of privacy in any of the items or places searched. Second, and independent of those statements, the court also held that Dixon had simply failed to meet his burden of proof on standing.

We affirm because we agree that Dixon failed to meet his burden of proof on standing. We do not believe, however, that the district court had evidence before it that could support its findings that Dixon made statements disassociating himself from the items and places searched.

A. *Dixon's Burden to Establish a Privacy Interest*

Because Dixon bears the burden of establishing his standing to challenge the December searches, he needed to come forward with some evidence that he had a subjective expectation of privacy in the Pontiac, the Silvis house, and the Audi. See *United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006) (affirming denial of motion to suppress where defendant failed to produce any evidence of a privacy interest); *United States v. Meyer*, 157 F.3d 1067, 1080 (7th Cir. 1998) (same); *United States v. Ruth*, 65 F.3d 599, 605 (7th Cir. 1995) (same).[1]

As we have noted before, it is almost impossible to find a privacy interest without an affidavit or testimony from the

---

[1] Because Fourth Amendment standing to challenge a search is not jurisdictional, ordinary rules of waiver and forfeiture apply. If the government concedes that the defendant has a reasonable expectation of privacy in the searched area, the district court may proceed directly to evaluating the merits of the challenged search. See *Byrd v. United States*, 584 U.S. 395, 411 (2018) ("Because Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim."); *United States v. Cellitti*, 387 F.3d 618, 623 (7th Cir. 2004) (accepting government's concession that defendant had standing to challenge seizure of keys). In this case, though, the government challenged Dixon's standing, and Dixon had an opportunity to respond if he wished with evidence supporting his asserted privacy interest.

defendant. *Mendoza*, 438 F.3d at 795, quoting *Ruth*, 65 F.3d at 605. During the pretrial suppression proceedings, Dixon offered only a conclusory assertion that he had an expectation of privacy in the searched properties. He did not claim to own or to possess legitimately any of the searched properties or to have a right to exclude others from them. He also did not testify, submit an affidavit, or produce any other evidence regarding his subjective expectation of privacy. Because Dixon failed to offer evidence from which the district court could find a privacy interest in the Pontiac, the Silvis house, or the Audi, he failed to show that those searches intruded on his Fourth Amendment rights. And because the cellphone and the duffel bag were found within the Pontiac and the Audi respectively, he also cannot challenge the searches of those items. See *Mendoza*, 438 F.3d at 795 ("[A] defendant must show a privacy interest not only in the seized good, but also in the area where the good was found."), citing *Salvucci*, 448 U.S. at 85.

Dixon might have been reluctant to provide evidence of his privacy interest because such evidence also would have tended to prove he was guilty of the charged offenses. It has long been established, though, that the government cannot use testimony given to meet Fourth Amendment standing requirements as direct evidence against the defendant at trial on the question of guilt or innocence. *Simmons v. United States*, 390 U.S. 377, 393–94 (1968). To benefit from *Simmons*, a defendant may assert his subjective expectation of privacy and request an opportunity to testify to the facts demonstrating his asserted privacy interest.[2]

---

[2] Our case law has consistently required a defendant to show disputed, material facts to receive an evidentiary hearing. E.g., *United*

Dixon's problem is that he never submitted any evidence *or* requested an opportunity to testify to his standing. Instead, he relied on the government's argument that the December searches were reasonable executions of Dixon's supervised release search condition. On appeal, he reprises his argument that the government conceded his proprietary interest in the items and places searched by relying on his search condition, since that condition authorized searches of "his" property.

We disagree. Dixon cannot rely on legal theories in the government's brief to establish his reasonable expectation of privacy. As other circuits have recognized, a defendant "is not entitled to rely on the government's allegations in the pleadings, or positions the government has taken in the case, to establish standing." *United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995); accord, *United States v. Maxwell*, 778 F.3d 719, 732 (8th Cir. 2015) (quoting *Zermeno*). The Ninth Circuit's analysis in *Zermeno* is persuasive on this point.

In *Zermeno* the defendant argued that he had a reasonable expectation of privacy based on his proprietary interest in the searched house. 66 F.3d at 1061. Instead of presenting evidence to support his interest, however, he relied on statements in the indictment that he leased and operated the searched home as a "stash house." *Id.* at 1061–62. The Ninth Circuit rejected his attempt to rely on the government's

---

*States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018). But a defendant may testify to meet his burden of proof on standing even if an evidentiary hearing is not otherwise necessary. As *Simmons* explained, a defendant's testimony given to meet standing requirements is "an integral part of his Fourth Amendment exclusion claim." 390 U.S. 377, 391 (1968). The use immunity provided by *Simmons* is therefore not contingent on the existence of disputed, material facts.

position about his guilt for the charged crime. The court explained that the "government's assertions in its pleadings are not evidence" and did "not relieve Zermeno of his burden to establish standing." *Id.* at 1062; see also *United States v. Long*, 301 F.3d 1095, 1099–1100 (9th Cir. 2002) (affirming denial of motion to suppress where defendant relied on government's argument at bail hearing that he resided at searched property and failed to present any evidence supporting his standing).

So too here. It was Dixon's "obligation to present evidence of his standing, or at least to point to specific evidence in the record which the government presented and which established his standing." *Zermeno*, 66 F.3d at 1062. The government's argument that the December searches were reasonable executions of Dixon's search condition is a litigating position, not *evidence* that Dixon had a proprietary interest in the items and places searched. The government's argument did not relieve Dixon of his burden to produce evidence showing his standing. Because he failed to meet that burden, he cannot challenge the December searches.[3]

---

[3] For the first time on appeal, Dixon also asks us to recognize "a limited form of standing where, as here, the Government derives its authority to search third-party property from a supervisee's release conditions." We decline to consider this novel theory of standing, which was not presented to the district court.

Like the district court, we recognize the tension between the courts saying that Dixon failed to establish standing to challenge the searches while saying at the same time that searches were justified under the supervised release condition allowing searches of "his" property. Nevertheless, we think the better analytic path is to keep questions of standing and reasonableness separate because of the different burdens of

B.  *Dixon's Supposed Statements Denying Links to Searched Locations and Items*

Dixon's failure to produce any evidence from which the court could find a privacy interest was a sufficient basis for denying his motion to suppress. See *Mendoza*, 438 F.3d at 795. The district court went further to address alternative grounds and found that Dixon had made statements disassociating himself from the Pontiac, the cellphone, the Audi, and the Silvis house during his appointment at the Probation Office. Based on those supposed statements, the court held that Dixon lacked a subjective expectation of privacy in any of the searched properties. Such statements of disassociation can indeed support a district court's finding that a defendant lacks standing to challenge a search. See *United States v. Carlisle*, 614 F.3d 750, 759 (7th Cir. 2010) (affirming denial of motion to suppress based in part on defendant's statements to officers that he did not own bag that was searched); see also *United States v. Amaral-Estrada*, 509 F.3d 820, 827 (7th Cir. 2007) (similar where defendant denied knowledge of car or bag inside).

The problem in this case is that there is no actual evidence in the pretrial record showing that Dixon made the alleged statements. To make its factual findings, the district court appears to have relied on the government's unsupported statement of facts.[4]

---

production and persuasion and the potential for factual variations posed by, for example, issues of abandonment or disclaimers.

[4] Dixon did attach the February 6 Revised Petition for Mandatory Revocation of Supervised Release to his Additional Argument/Briefing Motion to Suppress. Like the government's brief, the February 6 Petition

The district court erred by relying on the government lawyers' unsupported statement of facts to make factual findings. The unsupported assertions of attorneys are not evidence, so they cannot support a district court's factual findings. E.g., *United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008); *Campania Management Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 852–53 (7th Cir. 2002). Although evidentiary standards are relaxed in pretrial proceedings, Fed. R. Evid. 104(a), both the government and the defendant are entitled to "procedures sufficient to ensure a reliable determination of the facts underlying a motion to suppress." *United States v. Raddatz*, 592 F.2d 976, 982 (7th Cir. 1979), *rev'd on other grounds*, 447 U.S. 667 (1980), citing *Jackson v. Denno*, 378 U.S. 368, 376–77 (1964); *United States v. Watson*, 87 F.3d 927, 928 n.1, 932 (7th Cir. 1996) (remanding for new suppression hearing where district court "deprived the government of a fair hearing, and therefore ruled on an incomplete record"). Relying on unsupported assertions from either party fails to clear that bar.[5]

Because the government lawyers' assertions about what Dixon said during his appointment at the probation office

---

asserted that Dixon made statements disassociating himself from the objects of the December searches. Because those assertions by government lawyers were also unsupported by evidence, they do not fill the evidence gaps.

[5] For the same reason, we reject Dixon's argument that the facts known to the district court at the time of the pretrial suppression proceeding were sufficient to establish his standing. Those facts were also presented in the government's unsupported statement of facts. It would also have been erroneous for the district court to rely on the government's statement of facts to find that Dixon had a reasonable expectation of privacy in the searched property.

were not supported by record evidence, the district court should not have considered them. Nonetheless, the district court's error was harmless because we agree that Dixon failed to meet his burden of proof on standing.

## IV. *Reasonableness*

We also affirm the district court's denial of Dixon's motion to suppress evidence found during the searches of the Pontiac and the cellphone on the alternative ground that those searches were reasonable. Both searches were authorized by Dixon's supervised release search condition and supported by probable cause. It is less clear that the searches of the Silvis house, the Audi, and the duffel bag were authorized by Dixon's search condition, but because he failed to show standing, we need not resolve definitively the reasonableness of those searches. Before reaching the reasonableness of the December searches, we first address the government's failure to produce evidence supporting the reasonableness of the searches.

### A. *The Government's Burden to Support the Warrantless Searches.*

Because the December 18 searches were executed without warrants, the government bears the burden of proving the searches were reasonable. *United States v. Longmire*, 761 F.2d 411, 417 (7th Cir. 1985), citing *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971). Instead of submitting affidavits, officer testimony, or other evidence, the government relied on unsupported factual assertions in its brief. The district court relied in part on those unsupported facts to hold that the December searches were reasonable. For the reasons explained above, the government lawyers' unsupported

assertions simply did not provide a sufficient basis for the court's factual findings.

It is especially problematic for courts to rely on a government lawyer's unsupported statement of facts to hold that a warrantless search is reasonable. Requiring the government to prove the reasonableness of warrantless searches is one way that courts enforce the Fourth Amendment's "strong preference for searches conducted pursuant to a warrant." *Ornelas v. United States*, 517 U.S. 690, 699 (1996) (internal quotation marks omitted), quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Longmire*, 761 F.2d at 417.

A warrant must be supported by probable cause, an oath, and particularity. *United States v. Castetter*, 865 F.3d 977, 978 (7th Cir. 2017). These requirements are typically satisfied through an officer's warrant affidavit. *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013). It is inconsistent with the constitutional preference for a warrant to allow the government to justify a warrantless search without producing at least evidence comparable to what would have been required to obtain a warrant. An attorney's unsworn, second-hand account is not an adequate substitute for the sworn statement of the officers who gathered the information justifying a search. Cf. *United States v. Gibbs*, 26 F.4th 760, 766 (7th Cir. 2022) (in sentencing, a prosecutor's representation about what the defendant said during the proffer session was not "a substitute for calling the official who was present at the proffer session and obtaining that person's testimony").

Although the government failed to meet its burden to prove that the December searches were reasonable, we can use the evidence presented at trial to evaluate the reasonableness of the searches. As we explained in *United*

*States v. Howell*, 958 F.3d 589, 597 (7th Cir. 2020), we may exercise our discretion to consider trial evidence when reviewing a motion to suppress. Our decision in any particular case must strike a balance between two interests: "avoiding a windfall reversal of a conviction while also steering clear of unfair prejudice to the defendant." *Id.* at 596.

In *Longmire*, we relied on trial evidence to sustain the trial court's decision in similar circumstances. During the suppression hearing in that case, the government did not call the officer who gathered the facts justifying the challenged *Terry* stop. 761 F.2d at 416. At trial, however, the officer testified to the facts supporting the *Terry* stop. *Id.* at 418. His testimony established by a preponderance of the evidence that the challenged search was supported by reasonable suspicion. *Id.* Because the defendant did not challenge the trial testimony or attempt to show that it unfairly prejudiced her, we relied on the officer's trial testimony to affirm the denial of the motion to suppress. *Id.*; accord, *Howell*, 958 F.3d at 596.

Our considering the trial evidence here poses even less danger of unfair prejudice to the defendant than in *Longmire*, where the government did not identify any of the relevant facts during the suppression proceedings. 761 F.2d at 413–16. Here, the government's briefs identified all the facts it believed were pertinent to the reasonableness of the December searches. The trial evidence did not reveal new material facts but only provided actual evidence to support them. Further, Dixon had a strong incentive to contest the relevant facts during trial because those facts also tended to prove that he was guilty of the charged offenses. Cf. *Howell*, 958 F.3d at 597 (declining to consider officer's testimony at

trial because it revealed a new material fact that the defendant may have had sound strategic reasons for not challenging at trial). Because the trial evidence supports the district court's denial of Dixon's motion to suppress and we see no risk of unfair prejudice to Dixon, considering the trial evidence strikes the right balance between the interests at stake in this case.

B. *The Searches of the Pontiac and the Cellphone*

The touchstone of the Fourth Amendment is reasonableness. *United States v. Knights*, 534 U.S. 112, 118 (2001). Warrantless searches of parolees, probationers, and their property are evaluated under the general Fourth Amendment approach of examining the totality of the circumstances, including sharply diminished privacy interests during parole and probation. See *Samson v. California*, 547 U.S. 843, 848 (2006); *United States v. White*, 781 F.3d 858, 862 (7th Cir. 2015). We balance the degree to which a search intrudes on individual liberty against the degree to which it promotes legitimate governmental interests. *White*, 781 F.3d at 862, citing *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999). Dixon's status as a federal supervisee affects both sides of the scales. See *Knights*, 534 U.S. at 118. His legitimate expectation of privacy was significantly diminished while the government's law-enforcement interest in supervising probationers was substantial. *Id.* at 119–20; *White*, 781 F.3d at 862.

Balancing these interests, the Supreme Court has held that a warrantless search of a probationer's home or property satisfies the Fourth Amendment if it is "supported by reasonable suspicion and authorized by a condition of probation." *United States v. Caya*, 956 F.3d 498, 502 (7th Cir.

2020) (internal quotation marks omitted), quoting *Knights*, 534 U.S. at 122; *United States v. McGill*, 8 F.4th 617, 621–22 (7th Cir. 2021) (applying *Knights'* reasonable-suspicion standard to person on federal supervised release).

Dixon's search condition reads in relevant part:

> The defendant shall submit to search of his person, property, residence, adjacent structures, office, vehicle, papers, computers … and other electronic communications or data storage devices or media, conducted by a U.S. Probation Officer. … An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his release and/or that the area(s) or item(s) to be searched contain evidence of this violation or contain contraband.

Dixon argues that his search condition did not authorize any of the December searches for two independent reasons. First, he argues that the probation search team lacked sufficient reason to believe that the cellphone, Audi, duffel bag, or Silvis house were "his" within the meaning of his search condition. Second, he argues that the team lacked reasonable suspicion that evidence of the October hit and run would be found in any of the items and places searched. We take each argument in turn.

### 1. *The Pontiac and Cellphone*

First, we agree with Dixon that his search condition authorizes searches of only "his" property. Its language does not authorize warrantless searches of third-party property, nor could it. The government's "overwhelming interest" in

supervising parolees and probationers "warrant[s] privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson*, 547 U.S. at 853 (internal quotation marks omitted), quoting *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 365 (1998). People outside of the parole and probation systems cannot be subjected to the same kinds of warrantless intrusions on their privacy without their consent.

We have not before addressed what the government needs to show to establish that the items and places searched were sufficiently controlled by the supervisee to be searched without a warrant. Dixon argues that we should join the Eighth and Ninth Circuits in holding that an "officer must have probable cause to believe a dwelling is the residence of a parolee in order to initiate a warrantless search of a residence not known to be the home of a parolee." *United States v. Thabit*, 56 F.4th 1145, 1151 (8th Cir. 2023); accord, *Motley v. Parks*, 432 F.3d 1072, 1080 (9th Cir. 2005). The Ninth Circuit also requires lower levels of suspicion for other kinds of property searched pursuant to a supervised release order. See *United States v. Dixon*, 984 F.3d 814, 818–19 (9th Cir. 2020) (vehicles); *United States v. Bolivar*, 670 F.3d 1091, 1096 (9th Cir. 2012) (items inside a residence). The government does not take a position on whether some version of a sufficient certainty requirement exists. It argues that if such a requirement exists, the probation officers satisfied it here under either a reasonable suspicion or a probable cause standard.

We agree that when the government invokes a supervised release order to justify a warrantless search, it bears the burden of showing that the items or places searched were

sufficiently controlled by or connected to the defendant to fall within the terms of his supervised release order and the parolee/probationer exception to the warrant requirement. We leave more precise mapping of the contours of that requirement for future cases, perhaps with better evidentiary records.

Under any standard, the probation officers were sufficiently certain that Dixon possessed or owned the Pontiac and the cellphone. Dixon drove the Pontiac alone to his appointment with his probation officer, indicating that he controlled it. Regarding the cellphone found in the Pontiac, Dixon did not have a cellphone on his person when he was searched. More important, the officers managed to unlock the phone by using information they had about Dixon from independent sources, including his tattoos. Based on these facts, a reasonable person could easily find a "fair probability" that the cellphone belonged to Dixon. *United States v. Simon*, 937 F.3d 820, 833 (7th Cir. 2019) (internal quotation marks omitted), quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013); see also *United States v. Wood*, 16 F.4th 529, 532–33 (7th Cir. 2021) (applying parolee exception to warrant requirement to search cellphone found on a "junk pile" in defendant's home); *Bolivar*, 670 F.3d at 1092–93 (officers had reasonable suspicion to believe that backpack lying in closet of defendant's shared one-bedroom apartment was controlled by defendant).

### 2. *The Silvis House, the Audi, and the Duffel Bag*

The Silvis house, the Audi, and the duffel bag present a different story. It is unlikely that the officers were sufficiently certain that Dixon resided at the Silvis house. Dixon's reported residence was in East Moline, Illinois, not Silvis. The only connections between Dixon and the Silvis house were

text messages discovered on the cellphone telling unnamed recipients to come to the Silvis house. Although the text messages revealed a connection between Dixon and the Silvis house, they did not provide reasonable suspicion to believe Dixon resided at the Silvis house. Since homes are the preeminent focus of the Fourth Amendment's protections, e.g., *United States v. Berkowitz*, 927 F.2d 1376, 1385 (7th Cir. 1991), a lower standard may not adequately protect the relevant privacy interests. See *Thabit*, 56 F.4th at 1151–52; *Motley*, 432 F.3d at 1079–80.

The officers discovered the Audi only after searching what lawyers call the curtilage of the Silvis house, the land immediately surrounding the house. The Audi was parked behind the Silvis house and not visible from the street. "When 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a "search" within the original meaning of the Fourth Amendment' has 'undoubtedly occurred.'" *Florida v. Jardines*, 569 U.S. 1, 5–6 (2013) (holding that officers conducted a search when they physically entered and occupied curtilage of defendant's house to gather information by conducting a dog sniff), quoting *United States v. Jones*, 565 U.S. 400, 406–07 n.3 (2012). Evidence from the searches of the Audi and the duffel bag would therefore be admissible only if the search of the Silvis house and its curtilage was itself reasonable. See *Utah v. Strieff*, 579 U.S. 232, 237 (2016) ("the exclusionary rule encompasses … 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).

Because Dixon lacks Fourth Amendment standing, we need not definitively resolve the needed level of certainty for the search of the Silvis house. When, as here, both the defendant and the government had the opportunity to submit evidence and failed to do so, the defendant bears the adverse consequences of the failure to adduce proof. If the officers unlawfully entered the Silvis home or its curtilage, it may be that other persons, such as owners or residents, have civil claims for damages against the officers. *United States v. Jackson*, 576 F.3d 465, 468 (7th Cir. 2009). But Dixon cannot vindicate those persons' Fourth Amendment rights in this proceeding.

3. *Reasonable Suspicion for the December Searches*

For the searches of the Pontiac and the cellphone to be authorized by Dixon's search condition, they also had to be supported by reasonable suspicion. Dixon's arguments assume that the officers needed both (1) reasonable suspicion that Dixon violated a condition of his release and (2) reasonable suspicion that the area(s) or item(s) to be searched contained evidence of this violation or contraband. We read the "and/or" language of his search condition differently. Because the language included the disjunctive "or" between clauses, reasonable suspicion that Dixon violated a condition of his release was sufficient to invoke his search condition. See *Knights*, 534 U.S. at 121 ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.").

Before searching the Pontiac and the cellphone, the probation officers clearly had reasonable suspicion that Dixon had committed multiple federal crimes in violation of his supervised release order. Reasonable suspicion requires "specific and articulable facts" suggesting criminal activity under the totality of the circumstances. *United States v. Uribe*, 709 F.3d 646, 650 (7th Cir. 2013) (internal quotation marks omitted), quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The Rock Island Police Department's investigation of the October hit and run found a rental agreement tying the car to Dixon's mother, three guns, ammunition, and distribution quantities of suspected cannabis and cocaine. Shortly after the accident, the state trooper who saw it identified Dixon as the driver of the car, and another investigator discovered a photo of Dixon in the car. Further, a judge independently found probable cause that Dixon had committed multiple violations of law based on the October hit and run. These facts, and the judge's independent finding of probable cause, more than satisfy the reasonable-suspicion standard in Dixon's search condition.

In sum, because the probation officers were sufficiently certain that the Pontiac and the cellphone belonged to Dixon and had reasonable suspicion to believe he had committed multiple violations of law, the searches of the Pontiac and the cellphone were reasonable. Although it is less clear on this record whether the searches of the Audi, the Silvis house, and the duffel bag fell within Dixon's search condition, Dixon's failure to produce evidence of his standing is decisive without our needing to decide whether those searches were reasonable.

V.  *No Evidentiary Hearing*

Finally, Dixon argues that the district court erred by denying his request for an evidentiary hearing on his motion to suppress. Dixon requested a hearing to elicit testimony from the probation officers who conducted the December searches. He urged that "without any evidentiary hearing the Court does not have any facts to support findings relative to the Motion."

As we have explained, the lack of evidence in the pretrial record was a problem, but it was a problem for both sides. Neither the Federal Rules of Criminal Procedure nor our case law require district courts to receive evidence in a particular way or order when deciding a motion to suppress. To the contrary, district courts have discretion to choose procedures when deciding a motion to suppress. As the Supreme Court explained in *Byrd v. United States*, district courts may address Fourth Amendment standing and reasonableness in whatever order best serves the interests of the case. 584 U.S. 395, 411 (2018). Rule 12 places few restrictions on the procedures district courts may employ or the evidence they may consider when deciding pretrial motions.

If there are no material factual disputes, district courts may, and often do, decide pretrial motions to suppress on the paper record. See Fed. R. Crim. P. 47(b) (authorizing use of affidavits to establish facts in pretrial proceedings). If the record is insufficient to support a fact material to the district court's decision, the court can require the parties to supplement the record before ruling. See, e.g., *United States v. Sims*, 879 F. Supp. 883, 889 (N.D. Ill. 1995) (district court ordered government to provide evidence supporting its version of facts before relying on those facts to deny

defendant's motion to suppress). Alternatively, the defendant and the government can stipulate to some or all facts material to a motion to suppress. Our bottom line is simply that a district court's factual findings must be supported by record evidence.[6]

While a district court may hold an evidentiary hearing to fill gaps in the record, it is not required to do so. A district court is required to hold an evidentiary hearing only if "a substantial claim is presented and there are disputed issues of material fact." *United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018), quoting *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). To receive an evidentiary hearing, the defendant's "allegations and moving papers must be 'sufficiently definite, specific, non-conjectural and detailed'" to show that his claim is substantial and that there are material factual disputes. *Curlin*, 638 F.3d at 564, quoting *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007).

Dixon conceded in his moving papers that there "may not be 'significant' disputed facts regarding the Motion." That concession defeats his argument on appeal that he met his burden to establish disputed material facts. Although Dixon identified fourteen unsupported factual assertions in the government's brief, he never provided his own account of the December searches. Questioning the evidentiary basis for the government's factual assertions is not the same as identifying

---

[6] In the absence of an agreement between the parties, even an undisputed factual assertion ordinarily must be supported by record evidence for a court to consider it, as in civil summary judgment practice. Cf. *Stewart v. McGinnis*, 5 F.3d 1031, 1033–35 (7th Cir. 1993) (in summary judgment proceedings, district courts may consider an undisputed fact in a party's statement of facts only if it is also supported by record evidence).

specific, disputed facts. See *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990) ("Moreover, the series of questions Harris raises in his brief concerning the circumstances of his confession are just that—a series of questions. Not a single contention is backed up by clearly articulated factual charges. None is worthy of a hearing.").

Because Dixon did not identify any disputed, material facts, he did not establish the need for an evidentiary hearing, and the district court did not abuse its discretion by denying his request.

AFFIRMED.